## Tartar v. Skaggs, et al.

(Decided April 25, 1919.)

### Appeal from Edmonson Circuit Court.

1. Counties—Construction of State Aid Roads.—If it be the correct principle of law that a county may consider the part due it from the state in the construction of state aid roads as income for the year, when everything which the county is required to do has been done, and there remains nothing except to complete the road under the contract and for it to be accepted by the state

road department, only the sum due from the state for that year may be treated as such income. But before the county would be entitled to so consider it, everything required by the law must have been done by the county, with nothing remaining except the construction of the road under the contract and its acceptance by the State Road Commissioner, and when the county has done nothing but apply to the state for the fund and passed a resolution as provided by subsection 10 of section 4356x, the conditions are not such as would entitle the county to consider any part of the state aid fund as income.

2. Counties—Indebtedness—State Aid Roads.—The term "indebtedness" as used in sections 157 and 158 of the Constitution means a personal obligation on behalf of the municipality which the creditor may enforce against it, and does not include obligations which may have been entered into by the municipality but to be discharged in a particular manner or out of a specified fund and not with the funds of the municipality; and where a county in the construction of roads under the state aid plan obligates itself to pay its part of the construction which is within its constitutional powers, and further obligates itself to collect for the contractor the sum due from the state and pay it to him, or to assign to him the county's right to such fund after the road shall have been completed, and in no event to become liable to the contractor itself for that portion of the cost of the construction, it creates no indebtedness which the sections of the Constitution prohibit with reference to the state's part of such fund; but it may lawfully agree to pay to the contractor interest on that part until it shall be paid by the state, provided such interest does not increase its indebtedness beyond constitutional limitations.

3. Counties—State Aid Roads.—It is competent for the county to adopt a plan for the construction of state aid roads such as is outlined above.

JOHN A. LOGAN and GEORGE McCOMBS for appellant.

B. T. ROUNDTREE, M. M. LOGAN and GORDON & LAURENT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

On March 14, 1919, the fiscal court of Edmonson county, the members of which are the appellees, who were defendants below, adopted by unanimous vote a resolution as provided in subsection 10 of section 4356x, vol. 3, Kentucky Statutes, which was done in furtherance of a scheme to construct certain designated public roads in the county under what is commonly known as the "state aid" plan, provisions for which are made by chapter

87, page 441, of the Acts of 1914, as amended by chapter 23, page 65 of the published Acts of 1918, of which the subsection referred to is a part. The county had in the proper manner made application to the commissioner of public roads before July 1, 1918, as required by section 4356x, subsection 5 of volume 3 of the Kentucky Statutes. The resolution referred to complied in all respects with the requirements of the statute by designating the roads to be improved and how they should be improved, when the work should be done, and the amount of money to be expended thereon during the year, which was limited to $100,000.00. It further recited that the county had available for the purpose in its treasury, by taxation and donation, the sum of $25,000.00 which it proposed to pay in discharge of its one-fourth part of the price of construction when the road was completed, or at such time as might be agreed upon in the contract. After these preliminary recitations in the resolution, it thus continues:

"Resolved, further, that in advertising for the construction of said roads, or any part thereof, it shall be stated in the advertisement and made a part thereof that the contractors who may bid on said construction will be paid in cash by the county one-fourth of the cost thereof at the completion of the work, or at such other time as may be agreed upon; and that the said county, after said road or any designated part thereof has been fully completed to the satisfaction of the State Commissioner of Public Roads and he shall have approved the construction thereof and shall have certified that fact to the State Auditor, accompanied by a statement of the amount due, will execute an obligation, or issue a warrant, to the contractor, or to any one designated by him, conditioned that the money due from the State of Kentucky to the said county will be paid to the said contractor or to the person designated by him, at such times and in such sums as the same may be received by the county from the state; or will, by proper instrument, transfer to the contractor or any person designated by him the claim which the county has against the state for money due by reason of the construction of said road, or any part thereof, which has been accepted and approved by the State Commissioner of Public Roads, as aforesaid, and said contractor, or any person designated

by him, shall accept said obligation or transfer in full satisfaction for the construction of said road; that said obligation or transfer shall bear interest at the rate of six per cent per annum from the date thereof, payable semiannually, and that, in bidding on the work of construction, any contractor or any person dealing with the contractor shall understand that he is to be paid by the county for the construction of said road, or any part thereof, in the manner herein set out, and that the county will not be obligated to pay any part for the construction of said road or roads until it has been accepted by the Commissioner of Public Roads and the amount due the county has been duly determined and certified to the State Auditor by the said Commissioner of Public Roads, and that the county will then only pay on such obligation or transfer to the extent of the amount received from the State of Kentucky by reason of the construction of said roads or any part thereof, except that the county shall pay the interest as aforesaid; and this provision as to the payment for said work shall be fully set out in the contract for the construction of said road or roads, or any part thereof.''

Subsection 10 of section 4356x, *supra,* makes it the duty of the county court clerk of the county, after the passage of such resolution looking to the construction of state aid roads by the fiscal court of the county, ''to forthwith forward to the Commissioner of Public Roads an attested copy of said resolution.'' It is then made the duty of the latter officer to cause a survey to be made of the designated road or roads and to cause plans, profiles, estimates and specifications of the work to be prepared. But before the county court clerk of Edmonson county could notify the commissioner, this suit was filed by plaintiff (appellant) as a citizen and taxpayer of the county against the members of the fiscal court, seeking to enjoin them as such members, and to enjoin the court from carrying out the purposes of the resolution, and ''from proceeding with the plans set out in said resolution, or from having any survey made of said roads thereunder, or from advertising for bids or letting any contract in the terms therein set out,'' upon the ground, as alleged, that the amount of money proposed to be expended ($100,000.00) was much in excess of the revenue of the county provided for the year 1919, and that any contract for the construction of the designated roads

costing that amount would be void as violating the provisions of section 157 of the Constitution, there having been no election providing for the issual of bonds or in any manner authorizing the construction, and that because under subsection 10, *supra,* the county would be compelled to pay one-half of the expense of making the survey, plans, profiles, &c., such expense would be a wrongful and unlawful appropriation of the county's funds to the detriment of the taxpayers, for the county could not use the plans and specifications because it had no constitutional right to undertake the work.

It was alleged in the petition that the assessed valuation of the property in Edmonson county was less than five million dollars ($5,000,000.00), and that under subsection 18 of section 4356x, *supra,* it is required to pay only one-fourth of the cost of the proposed construction (the roads being inter-county seat roads) and the state the other three-fourths.

A demurrer was filed to the petition which was sustained, and plaintiff declining to plead further, his petition was dismissed, the court rendering a judgment in which it held:

"(1) That in letting contracts to construct roads as set out in the resolution of the fiscal court, the county would not incur any indebtedness in the year in excess of its income and revenue for the year because the county has the right to consider as income for the year the amount due from the state payable from year to year, as the state's part of the cost of said roads.

"(2) That the county may legally satisfy or pay the contractor for his service in constructing said roads by executing an obligation to such contractor conditioned that the county will pay said contractor three-fourths of the cost of constructing said roads out of the money received from the state as state aid, at the time and in the sums received from the state, provided such provision is made one of the conditions of the advertisements on which bids are received and one of the conditions and terms of the contract under which said roads are constructed; or the county may assign its claim against the state for the amount due from year to year as payment of three-fourths of the cost of constructing said roads, provided, a provision to that effect is incorporated in the advertisements for bids and the contract under which said roads are constructed.

"(3) That the conditions of a contract as above indicated would not be incurring any indebtedness by the county within the meaning of the Constitution of Kentucky, or if an indebtedness it would not exceed the income and revenue of the county for the year in which the indebtedness is incurred when the income to the county from the state by reason of the construction of said roads is taken into consideration.

"(4) That the county may agree to pay interest on the amount due from the state until same is paid by the state, provided in so doing the county does not incur an indebtedness in excess of its income and revenue for any year, and provided further that the county may not pay a greater rate of interest than the state pays on other warrants or obligations; and that the interest paid by the county on said obligations or transfers is a part of the cost of constructing said roads." To reverse that judgment, plaintiff prosecutes this appeal.

The precise and only real question involved in this case as presented by the petition is whether the method of payment for the construction of the work as provided 'in the excerpt we have made from the resolution obligates the county to pay or in any manner become responsible for the entire cost of the work, or whether it is obligated to pay only one-fourth of the cost—$25,000.00. In other words, did the county, under the terms of that resolution (if literally carried out) "become indebted" for the entire cost of the work or for only one-fourth of it? If the effect of the proposed terms of construction is to obligate the county for the entire cost of the work, then clearly plaintiff is right in his contention, since that amount would exceed the revenue provided for the county for the year in which the contract was made, and would be prohibited by section 157 of the Constitution, in which case the demurrer to the petition should have been overruled; but if the effect of those terms is to obligate the county to pay only $25,000.00 (which is not a sum exceeding the limits of indebtedness provided by section 157 of the Constitution), then the judgment sustaining the demurrer to the petition was correct.

It will be observed that the part of the resolution which we have copied herein provides that the advertisement for the construction of the work, as well as the contract therefor, shall each stipulate as a part thereof

that the county will pay only one-fourth of the cost of construction, and that the other three-fourths of the cost will be paid in either of two ways to be selected by the contractor; (a) that the county will, upon the completion of the work and its acceptance by the State Commissioner of Public Roads and his certification of that fact to the State Auditor, then execute to the contractor its obligation or warrant to pay to the contractor the sums paid by the state in discharge of its part of the costs of construction when and only when such sums shall be received by the county; or (b) that the county in such obligation or warrant (at the option of the contractor) will transfer to him, upon the completion and acceptance of the work, the claim which it has upon the state for the amount due from the latter as its part of the construction.

It is further provided in the resolution that the county will not be obligated to pay any part of the cost of construction of the proposed improvement until it has been accepted by the commissioner and the amount due the county determined and certified to the auditor and "will then only pay on such obligation or transfer to the extent of the amount received from the state of Kentucky by reason of the construction of said roads or any part thereof." It does agree, however, to pay the interest on the amount that may be due from the state until it is paid. There is no contention in the record that such interest will exceed the constitutional limit of indebtedness.

Dillon on Municipal Corporations, 5 edition, vol. 1, sec. 193, thus defines the term "indebtedness," as used in statutes and constitutions, when limiting debts of municipalities: "The term 'indebtedness' may be said to include obligations of every character whereby a municipality agrees or *is bound to pay* a sum of money to another."

It would seem that independent of any adjudged cases or statements of law writers, there could be nothing clearer than that Edmonson county, in the adoption of the resolution, *supra,* did not bind itself to pay or contract to pay any sum of money for the construction of the proposed road except its one-fourth of the cost and the interest on the other three-fourths until it should be collected from and actually paid by the state. Not only is the language employed incapable of being construed

into an obligation on the part of the county to pay any more than the sums referred to, but, to place the matter beyond doubt, it is expressly stated in the resolution that the county will not be obligated to pay any part of the state's proportionate part of the cost of construction but that it will turn over to the contractor that amount as collected by it, or assign the sum due from the state to him at his option. If language is capable of expressing the intention and purposes of parties to a contract, it has certainly fulfilled that office in the resolution adopted.

But there is abundant authority holding that where a county or municipality whose powers to contract debts are limited enters into a contract providing that its obligations shall be discharged out of a specified fund not belonging to the county or municipality, that such an obligation is not the incurring of any prohibited indebtedness nor indeed is it the incurring of any indebtedness at all, although the county or the municipality may be obligated to perform some function or act in collecting and distributing the specified fund. Hence we find in section 198 of Dillon, *supra,* the general rule (and so far as we are aware the one without exception) thus stated:

"In the case of streets, sewers and other local improvements, which are payable from the proceeds of special assessments upon the property benefited thereby, a contract which provides that the contractor shall be paid from such assessments, that he shall have no right of recourse against the municipality or its property, or its general power of taxation, and that the only duty of the municipality shall be to levy, collect, and pay over the special assessments, does not create any indebtedness on the part of the municipality within the meaning of the constitutional limitation, although the city is a party to the contract, although the money is payable through its general treasury, and although it issues certificates, warrants or bonds payable out of such special fund for the payment of the cost of the improvement. Under such a contract no judgment *in personam* against the city for the non-payment of the cost is justified, no charge can be enforced against its general assets, nor can a resort be had to general taxation for the purpose of satisfying the claim. When the rights of the contractor are so limited, there is no debt within the debt limit provision of the Constitution."

The same doctrine is stated in McQuillan on Municipal Corporations, section 1950; German & American Savings Bank, &c. v. Spokane, 17 Wash. 315; Wilson v. City of Aberdeen, 19 Wash. 89; Rhode Island, &c. v. Spokane, *idem.*, 616, and a great number of cases from the highest courts of many of the states and from the federal courts as found in the note to the text from which we have just quoted, including the two cases from this court of Catlettsburg v. Self, 25 Ky. Law Rep., 161, and Adams v. City of Ashland, 26 Ky. Law Rep. 184.

In the last two cases referred to the cities of Ashland and Catlettsburg had improved some of their streets by original construction and issued bonds for the costs of the improvement, in which it was stipulated that the city should not be liable but that the contractor should look to the abutting property owners only, the city, however, agreeing to collect that fund and pay it to the contractor. In each of the cases it was held that this was not the incurring of an indebtedness by the city as was contended by plaintiffs, and, therefore, did not come within the inhibition of section 157 of the Constitution. In the Adams case the court used this language:

"Here it is not proposed to issue the city's bonds as a municipal liability, or that the city shall at all become liable for the cost of this work. It is to be charged alone against the abutting property, and to be paid by that property. There can be no liability against the city for the work. The holders of the bonds would be compelled to look alone to the fund created by the collection of these assessments against the abutting property for their payment. The inhibition of section 157 of the Constitution against a municipality's becoming indebted in any year beyond the revenues of such year, without a favorable vote of two-thirds of the voters upon the proposition, can not apply."

In this connection it may be stated that it is competent for parties to a contract to agree that its obligations may be discharged out of a particular fund or only in a particular manner. Cases, *supra*, and 9 Cyc., 616. In this case we have no right to presume that the county in advertising for the letting of the contract for the work, or in the contract itself, will fail to observe the terms of the resolution in respect to the payment of the cost of constructing the work, and if the plan thus outlined is

followed, there can be no doubt but that the county will not become indebted within the meaning of the constitutional provision for the part of the cost due from the state, and the court was correct in holding as set out in paragraphs 2, 3 and 4 of the judgment, since we find no objection to the method adopted by Edmonson county.

If it was imperatively required that the county should either pay or become obligated for the entire cost of construction before it would be entitled to its part of the state fund, a county with a small assessment of property would be largely deprived of the benefits of the state aid law, for it could not, even with the aid of an election, as provided by section 158 of the Constitution, create a fund sufficient to construct more than a small per cent of the mileage of its roads, and unless some method can be provided whereby the law will be substantially complied with, and at the same time the county not become indebted within the inhibitions of the Constitution the poorer counties of the state would be helpless so far as obtaining assistance from the state in constructing its roads. The plan adopted in this case protects the contractor, and at the same time guarantees as favorable a contract as could be obtained if the county paid for the work when completed. This because the contractor instead of being paid by the county the contract price at once obtains the right to the portion of it due from the state when the state pays it, and in the meantime obtains interest upon it.

We could well close this opinion at this point, since we have determined all of the questions raised by the pleading and its exhibit (which is a copy of the resolution), but it is insisted, and the court seems to have determined in the first paragraph of its judgment, that the facts as disclosed by the petition and exhibit place the county in the condition where it would have the right to consider the amount that will be due from the state when the work is completed as income, and that if it saw proper to do so it could go beyond the terms of the resolution and obligate itself to pay for the entire work under the doctrine of the cases of Mitchell v. Knox Co., 165 Ky. 543, and Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199.

The opinion in the Knox county case, as we understand it, goes no further than to hold that whatever sum may be due from the state in the construction of roads

under the statute for any particular year may be regarded as that much income for that year, but, according to the opinion, before that sum can be considered as income the road must have been completed and the fact certified to the State Auditor. At least such were the facts upon which the opinion, holding that the fund due from the state might be treated by the county as income, was rested.

In the McCrocklin case, the same rule is adhered to, but the time when the county may regard the state's part of the cost of construction as income is extended, so to speak, when the court says:

"There are certain specific and essential requirements that each county must observe before it will certainly be entitled to receive from the state that part of the state road fund allotted to the county, or any part thereof. But when all of these requirements have been complied with on the part of the county as well as the State Road Department, and nothing remains to be done by the county to get its share of the fund except to complete the road to which the fund is allotted and the acceptance of the road by the State Road Department, we perceive no good reason why this state road fund should not be estimated as a part of the income of the county for the year, or why the county should not be allowed to treat this fund as a part of its assets."

It does not fully appear in the instant case that Edmonson county has entirely complied with all of the rules and regulations of the State Road Department which would, without question, entitle it to the state aid fund, as was held necessary in the McCrocklin case. No plans or specifications have been prepared for the work, nor has any contract been let, and there yet remain many things for the county to do in order to get its share of the fund other than "to complete the road to which the fund is allotted and the acceptance of the road by the State Road Department," as was the condition in the McCrocklin case. However, counsel for the county in this case seem to insist that the indebtedness is not incurred until the contract is let—which are simultaneous acts—and that there then remains nothing to be done but for the county to complete the road, and that Edmonson county, under the facts of this case, would incur no indebtedness until the contract was let, after which time nothing would remain but to complete the contract, and it is therefore

competent as insisted for it to take into calculation as a part of its income the amount that will be due from the state, under the rule as set out in the McCrocklin case. But even if this contention were sound (which we do not determine) the county would not be entitled, as held in that case, to consider as income for the year only that proportionate part of the "state aid" fund which was collectible for that year, since the statute provides that the state shall not pay to any county in any one year exceeding two per cent of the state road fund, and not that much unless a distribution among the counties that have applied for it will permit it. There is, therefore, no way to determine how much will be due or collectible from the state for this or any succeeding year, and therefore no fixed amount which the county could consider as income. We therefore conclude that the holding of the court, in paragraph one of the judgment, was and is erroneous.

It is insisted by counsel for the county that we determine the proper allotment to Edmonson county of the state aid fund in the years succeeding that in which the work is done and the basis upon which the state shall, in subsequent years, apportion or make distribution to that county; and further, whether the warrant of the auditor, which may be issued for the state's part of the fund after the work shall have been completed and accepted, shall bear interest. But neither of these questions is presented by the petition, nor did the judgment appealed from deal with either of them. Furthermore, these are questions in which the state is vitally interested, and neither it nor the road department, nor any one having the right to represent it, is made a party to this suit, and anything we might say upon either of the questions would be dictum.

Wherefore, the orders of the court sustaining the demurrer to the petition, and paragraphs 2, 3 and 4 of the judgment are affirmed, but the judgment is reversed as to paragraph 1 thereof, which the court will eliminate upon a return of the case.