## Short, et al. v. Fiscal Court of Ballard County.

(Decided November 11, 1919.)

### Appeal from Ballard Circuit Court.

1. Highways—Roads—State Aid Roads—How Funds May Be Used. —No part of the state road fund can be appropriated by either the state or the county to any other purpose than the building of roads and bridges.

2. Highways—Roads—Proceeds of Bond Issue for, Must Be Used for Road Purposes.—No part of the funds realized from a bond issue voted by the people to construct and maintain roads and bridges can be diverted to any other use or purpose.

3. Highways—Roads—Application of State Road Fund to Help Pay Bonded Road Debt of County.—Where a county has voted a bond issue for road purposes and under an arrangement with the state the whole of it is used in building roads under state direction the county may apply to the extinguishment of its bonded road debt the money returned to it by the state to meet its half of the cost of the roads.

4. Highways—Roads—State Road Funds to be First Used to Build Inter-County Seat Roads.—When the county applies for state aid and the county and state each furnish at the time one-half of the expense the funds of both county and state must first be used in constructing as far as they will go inter-county seat roads under the direction of the state road authorities.

5. Highways—Roads—State Aid Fund—When Fiscal Court May Apply Same to Roads That Are Not Inter-County Seat.—When a county votes bonds to build roads and makes arrangements for state aid, and the county advances to the state the state's one-half of the cost of construction and the whole of it is used in building inter-county seat roads under state direction the money so advanced when returned to the county by the state becomes a part of the road fund of the county and may be used by the fiscal court in the construction and maintenance of such roads as it sees proper to apply it to.

6. Highways—Roads—State Road Fund—When County May Apply to Construction and Maintenance of Other Than Inter-County Seat Roads.—When a county voted a bond issue of $300,000.00 to build roads and under an arrangement with the state the whole of it was used under state direction in constructing inter-county seat roads, the state being unable at the time to put up its one-half of the cost, the fiscal court has the right to use the $150,000.00 put up by it for the state in the construction and maintenance of such roads as the fiscal court may direct when it is repaid to the county in annual instalments.

WHEELER & HUGHES for appellants

M. C. ANDERSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Affirming

In 1915 there was adopted by the voters of Ballard county a proposition authorizing the issual of $300,000.00 in bonds, the proceeds of which were to be used in constructing and reconstructing roads and bridges in the county under the direction of the fiscal court. After this the county entered into arrangements with the State to build roads under the state aid plan provided for in section 4356x of the Kentucky Statues. The roads built under this arrangement cost $300,000.00, all of which was put up by the county out of its bond issue as the state could not put up at the time its one-half ($150,000.00) of the $300,000.00, and thereupon the state under the statute became indebted to the county in the sum of $150,000.00 which was to be paid to the county each year by the state in installments equal to and representing Ballard county's annual share of the state road fund until the amount due had been paid.

Pursuant to its obligation the state paid into the treasury of Ballard county the installment due by it in 1918, amounting to about $10,000.00.

In 1919 the appellants, Short and others, residents and taxpayers of Ballard county, brought this suit against the county judge and the members of the fiscal court of Ballard county seeking a mandamus to compel them as members of the fiscal court to construct with this $10,000.00 or so much of it as might be needed the unfinished part of one inter-county seat road described in the pleading.

In the petition, after setting out the adoption of the bond issue by Ballard county, the expenditure of the whole amount realized therefrom in the construction and reconstruction of roads and bridges, and the statutes under which the state became obligated to return each year to Ballard county its proportionate share of the state road fund, it was further averred in substance that with the $300,000.00 raised by the bond issue the fiscal court had improved and constructed all the inter-county-seat roads leading from the county seat of Ballard county to the county seats of adjoining counties except a part of the inter-county seat road leading from the county seat of Ballard county to the county seat of Pulaski county, Illinois; that it had constructed and improved a part of this road but refused to complete it, although it had in

its treasury a sufficient road fund received from the state under the circumstances stated to finish it; that the fiscal court, although under a statutory duty to complete this road with the state road funds in its treasury, intended to and would unless otherwise compelled by the court expend the road fund then in the treasury as well as other like funds, that might come into it as a part of the state aid, in the maintenance of the inter-county seat roads already constructed and in the construction and improvement of other public roads in the county.

On the demurrer of the fiscal court to the petition it was dismissed, and on this appeal from the judgment dismissing the petition the only question we need consider is the correctness of the ruling of the lower court; that the fiscal court was not obliged to appropriate this state aid fund to the completion of the inter-county seat road mentioned, but had the right to place it in the general road fund and use it in the maintenance and construction of any roads in the county to which the fiscal court saw proper to apply it.

In Mitchell v. Knox County Fiscal Court, 165 Ky. 543, we had before us a case presenting a question quite similar to the one raised in this case. In that case the county of Knox voted a bond issue of $200,000.00 under section 4307 of the Kentucky Statutes for the purpose of building roads and bridges under section 4356x of the Kentucky Statutes. As the roads and bridges were to be constructed under state supervision Knox county would become entitled to receive from the state road fund one-half of the amount of this $200,000.00 if the whole of it was used in the construction of the county roads under state supervision and direction.

The fiscal court having used the $200,000.00 bond issue in the construction of roads under state supervision and direction adopted a resolution providing that the money paid annually by the state to Knox county to reimburse it for the one-half of the $200,000.00 should be appropriated to paying the interest on and creating a sinking fund for the payment of the bonds issued to raise the $200,000.00.

The right of the fiscal court to do this was contested by Mitchell, and the question before us on the appeal was, as stated by the court in the opinion, "Can any part of the state aid fund received by the county be used to pay either the principal or interest of the county appropria-

tion toward the building of roads and bridges?'' In considering this question the court, after quoting subsection 18 of section 4356x of the statute, reading that ''one-half of the cost of all roads built under the provisions of this act shall be paid out of the moneys set apart in the treasury of the state to the credit of the state road fund and not otherwise appropriated.  It is the purpose of this act that the state shall pay one-half and the county one-half of the cost of all construction or reconstruction of all roads in which state funds are used.''

And subsection 19 of section 4356x reading that ''The state commissioner of public roads shall certify from time to time to the state auditor when a road is completed to the satisfaction of the commissioner of public roads, the amount to be paid the county, and the state auditor shall draw his warrant for the amount so certified on the state treasurer in favor of the treasurer of the county, and the state treasurer shall thereupon pay the same to the treasurer, who shall be the custodian thereof and shall be accountable therefor to the fiscal court of the county,'' proceeded to say:

''From these controlling provisions of the statute, it will be seen that the plan of constructing public roads thereunder plainly contemplates that the state shall pay one-half and the county the other half, of the cost of all public roads constructed or reconstructed under the statute, and that the county is not entitled to receive its appropriation from the state road fund until after it shall have completed the road for which it has asked state aid, to the satisfaction of the state commissioner of public roads, and he shall have certified that fact to the state auditor, accompanied by a statement of the amount due the county.  When that has been done, and not until then, the state auditor is required to draw his warrant for the amount so certified, in favor of the county treasurer who is to receive it and be accountable therefor to the fiscal court of the county.  Subsection 19.

''It will thus be seen that the state pays no part of its State road fund to the county in aid of its public roads until after the particular road for which it is entitled to contribution has been constructed by the county; but, when the road has been completed under the supervision of the state commissioner of public roads, the county is then entitled to receive from the state road fund one-half of the cost, which it turns into its treasury.  The money

so received thus becomes the money of the county, and may be appropriated and used as other county funds.

"The fact that the money expended by the county in building roads under the state aid plan is derived from the sale of county road bonds, does not affect the question. The basis of the state's contribution is the amount of money expended by the county in the construction of public roads, whether it be raised by ordinary taxation or from the sale of bonds. Subsection 5, *supra*.

"In short, whenever a county constructs a public road under the direction of the state commissioner of public roads and the provisions of the statute, the state will refund to the county one-half of the cost thereof out of its state road fund; and the money thus becoming the property of the county, it may be appropriated and applied as ordinary county funds.

"This is a full compliance with subsection 5, *supra*, which provides that money so appropriated from the state road fund shall be expended in constructing or reconstructing public roads under the direction of the state commissioner of public roads, since the road for which the appropriation is made out of the state road fund must have been completed before the state aid appropriation can be paid. This satisfies the requirement of the statute, that all money appropriated from the state road fund must be expended in constructing and reconstructing public roads under the direction of the commissioner of public roads.

"We are of opinion, therefore, that the fiscal court of Knox county acted within its powers when it applied a portion of the money to be received by it from the state aid fund to the payment of its bonded indebtedness, as set forth in the resolution of March 29, 1915, above quoted."

It may be seen from a reading of the statute making provision for building roads by state aid, only a part of which we will set forth in this opinion, that no part of the state road fund can be appropriated by either the state or the county to any other purpose than the building and maintenance of roads and bridges, nor can any part of the funds realized from a bond issue voted by the people of the county to construct and maintain roads and bridges be diverted to any other use or purpose.

The state road fund as well as funds raised by the county for road purposes are set apart by the statute to

be used exclusively for these purposes and it would be a wrongful misappropriation of public funds, by the state or county authorities to use them in any other way or for any other state or county purpose, however useful, necessary or legitimate the purpose might be.

It will be observed that in the Knox county case the court held that the annual installments paid out of the state road fund to the county of Knox to defray one-half of the expense that the county had incurred in building under state direction and supervision roads with the money raised by its bond issue could be used by the county in paying the interest on and creating a sinking fund to extinguish the $200,000.00 bond issue, all of which had been expended by the county in building roads under state supervision and direction.

After a re-examination of the question we approve this conclusion of the court because under the order adopted by the fiscal court all of the annual installments paid by the state out of the road fund or so much thereof as might be necessary would be applied by the county to road and bridge purposes. The application of the state fund to the extinguishment of the bonded debt created for road purposes was as clearly the application of the state road fund to road and bridge purposes as if it had been directly used by the county in building under state supervision and direction a particular road in the county.

We are further of the opinion that the court in saying that "the money so received thus becomes the money of the county and may be appropriated and used as other county funds," and in saying that "the money thus becoming the property of the county it may be appropriated and applied as ordinary county funds," did not mean that the state road fund when paid to the county might be appropriated and applied to any other purpose than the building of roads or bridges or used to defray other expenses of the county such as paying salaries of county officers or building or maintaining county buildings, or providing for the care of its poor or unfortunate. What the court meant in using the quoted words was that the money received from the state might be appropriated or used as other funds raised by the county for road and bridge purposes might be used and appropriated, and the quoted words used by the court in respect to the use the county might make of state road funds should be so limited.

In Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, it was said in a general way in connection with the questions raised in that case, which only concerned the indebtedness a county might create, that when "the state road department has set apart to a county its proportion of the state road fund, and the county has complied with all the requirements of the state road department that will entitle it to the fund so set apart for its benefit, . . . . and nothing remains to be done by the county to get its share of the fund except to complete the road to which the fund is allotted and the acceptance of the road by the state road department, we perceive no good reason why this state road fund should not be estimated as a part of the income of the county for the year, or why the county should not be allowed to treat this fund as a part of its assets."

The feature in the McCrocklin case mentioned in the excerpt from that opinion was also briefly discussed in Tarter v. Skaggs, 184 Ky. 58, but in neither of these cases is there anything said that might fairly be construed into an expression that a county may appropriate any part of the state road fund to any other purpose than the building of roads and bridges.

The argument is further made that as section 4356w of the Kentucky Statutes provides that "roads connecting the county seat of each county of the Commonwealth with the county seats of the adjoining counties . . . . shall be the first to receive state aid, and after such roads are constructed in any county of the Commonwealth, then all other roads to which state aid is furnished thereafter may be deemed public state highways;" and as it is further provided in the first paragraph of subsection 5 of section 4356x that money in the state treasury to the credit of the state road fund shall be apportioned among the counties applying for state aid in the manner hereafter provided, and that such state funds "shall be expended in constructing or reconstructing public roads under the direction of the commissioner of public roads," these two provisions when read together mean that all state aid shall be first applied to the construction of inter-county seat roads and be expended under the direction of the state commissioner of public roads.

This construction is correct insofar as it applies to state road funds that are put up by the state at the time to equal the amount put up by the county, or in other

words, when the county applies for state aid and it is presently supplied, the county and state each furnishing at the time one-half of the expense of building the roads, the funds of both county and state must first be used in constructing as far as they will go inter-county seat roads under the direction of the state road authorities. But the first paragraph of section 5 does not apply to the facts of the case before us.

In the last paragraph of subsection 5 it is further provided that "any county voting bonds and expending the proceeds of same in building public roads under the direction of the commissioner of public roads may, in case the amount thus expended exceeds the proportional amount said county may be able to secure from the state road fund, then in that event said county shall be entitled to receive from the state road fund in subsequent years such further amounts as will make the total amount received from said fund equal to one-half of the moneys expended by said county under the direction of the commissioner of public roads; provided, that the said county shall expend said funds thus secured in constructing or reconstructing public roads." This provision was intended to meet a situation such as is furnished by the facts of this case.

Here the county voted bonds and expended the proceeds of the entire issue in building public roads under the direction of the state road department, the state not contributing anything at the time. Under the circumstances the county became entitled to receive from the state road fund in subsequent years such an amount as would make the total received from the state equal to one-half of the money expended by the county.

It will be observed that in the last paragraph of subsection 5 of section 4356x, it is provided that the county shall expend said funds thus secured "in constructing or reconstructing public roads." The state fund thus referred to is the fund paid by the state to the county in subsequent years to make up the state's part of the money furnished and advanced by the county to the state when the roads built under state direction and supervision were constructed. And this fund is not required by the statute to be used in constructing or reconstructing inter-county seat roads but may be used by the county in "constructing or reconstructing public roads." Nor is there anything in the amendatory act of 1918 that conflicts with this construction.

In short, the statute contemplates and makes pro-
vision for two different conditions that may arise. One
is, when the state at the time the roads are built or in the
year that they are built is able to and does pay to the
county its one-half of the cost of construction.

The other condition arises when the state not being
able at the time the roads are built or during the year to
meet the sum the county is ready to put up, agrees to pay
the county its one-half in subsequent yearly instalments.

But in either event or under either condition all the
money the state does or is to furnish must be used in
building inter-county seat roads.

In this case the state only became obliged to contri-
bute to Ballard county $150,000.00, and when the county
had put up to meet this, $150,000.00 of its own funds and
in addition thereto advanced to the state the $150,000.00
that it was going to contribute and the whole $300,000.00
was expended in constructing inter-county seat roads un-
der state direction and supervision it is plain that the
state should have no control whatever over the manner
in which the $150,000.00 that subsequently might be re-
turned to the county should be expended by the county.
This money so to be returned to the county belonged to
the county and the fiscal court had the right to use it
free from state interference or control in the construc-
tion and maintenance of any county roads it might see
proper to apply the fund to.

If this were not so it would necessarily follow that
the state, although it had only agreed to put up $150,-
000.00 would control and direct not only the expenditure
of the $300,000.00 that it had a right to control the use
of, but in addition to this the expenditure of $150,000.00,
or in all $450,000.00, when it only had the right to direct
and control the expenditure of $300,000.00.

Put in other words, if the state had been in position
to and had paid its $150,000.00 at the time Ballard county
completed these roads that were constructed with its
$300,000.00 it is clear that Ballard county would have in
the treasury $150,000.00 when the roads had been fin-
ished.

It is equally plain that as this $300,000.00 was raised
by Ballard county for general road purposes it could
have used any part or the whole of it had it not asked
state aid in the building and maintenance of such roads
as the fiscal court saw proper to apply it to, and there-
fore it has the same right to use in its own way the $150,-

000.00 it advanced to the state when returned by the state, because this $150,000.00 returned by the state occupies exactly the same status that would have been occupied by $150,000.00 of the bond issue if it had been left in the treasury and not used in building roads in partnership with the state.

It may happen in some counties as it did in Ballard county that the amount contributed by the state in connection with an equal amount contributed by the county will not be sufficient to complete all the inter-county seat roads, but this circumstance can not affect or interfere with the right of the county to use what remains of its own fund in building or maintaining such roads as it desires.

Wherefore the judgment is affirmed.