Plaintiff, as the holder and owner of two promissory notes of defendant, for $300 and $88.13, respectively, dated March 12, 1942, each due 120 days from date, seeks by this suit to recover judgment for the amount of the notes with interest and attorney's fee as therein stipulated, less a credit of $36.20. The notes are made payable to the order of the maker and were by him endorsed in blank.
Defendant resists the suit on the ground that the notes represent amounts advanced to him by plaintiff to enable him to solicit life insurance for the Mutual Life Insurance Company of New York, of which plaintiff was then and is now Louisiana Manager, and which advances, it was expressly understood and agreed between plaintiff and defendant, were to be repaid only from commissions accruing to defendant on renewal premiums; that otherwise no personal obligation devolved upon defendant to repay said advances. He alleges that he has paid over to plaintiff all commissions due and received by him *Page 615 
from the company on renewal premiums, amounting to $36.20. Further pleading, in defense of the suit, defendant avers that he: "agreed to go to work for plaintiff's company in the nature of a joint venture in which defendant agreed to give his time, labor and services and the plaintiff agreed to advance the expenses required."
It is the contention of plaintiff that the advances were unconditional loans and carried with them the personal obligation of defendant to repay same without reference to any commissions he expected to receive from the company on insurance procured by him as its agent.
The lower court resolved the issue in favor of defendant and rejected plaintiff's demand. He appealed to this court.
At plaintiff's urging, defendant consented to act as agent for the Mutual Life Insurance Company of New York in soliciting and taking applications for life insurance of various kinds on a commission basis. He began work under contract with the company on August 1, 1941, the day following his graduation from the Louisiana Polytechnic Institute in Ruston, Louisiana. But, before signing the contract he acquainted plaintiff with the fact that he was wholly without finances or credit necessary to enable him to energetically canvass for insurance the territory assigned to him. Plaintiff, who has had many years experience in engaging, financing and directing inexperienced agents for the company, was of the opinion that defendant would need at least $150 monthly to properly prosecute his work of soliciting insurance. He was willing to advance to him one-half of said amount so long as needed, provided defendant could arrange to finance himself for expenses in excess of this amount. Defendant contends and testified that he refused to agree to accept any advance from the plaintiff as loans to him that carried personal and unconditional Obligation on his part to repay, but after being assured by plaintiff that in keeping with the well established practice on his part and that of the company, he would not be asked or required to repay said advances, beyond the amount of commissions due him on renewal premiums on insurance he had procured for the company, he consented to accept and did accept the advances. These were made semi-monthly in amounts of $37.50 and defendant in each instance gave to plaintiff his note therefor. The total of the advances made aggregate $375, the last being on December 15, 1941.
Although defendant for several months energetically solicited applications for insurance in the territory assigned to him, for causes beyond his control, including gas rationing and other conditions super-induced from the state of war, his efforts were not rewarded with nearly the success he had expected. As time passed business grew worse — so much so that he went to New Orleans in March, 1942, for the purpose of discussing the situation with plaintiff. He explained to plaintiff that in order to earn a living he was forced to abandon the solicing of insurance in the territory assigned to him and had decided to seek employment in the City of Baton Rouge, Louisiana, but wished to be licensed to solicit insurance there on part time basis. Plaintiff consented to this plan, but, for some reason, did not provide defendant with the necessary credentials authorizing him to continue work for the company on the basis mentioned. On April 28 thereafter, plaintiff cancelled defendant's contract with the company.
While in plaintiff's office in March, defendant signed the notes on which this suit is based. They supersede 10 notes of $37.50 each that he had prior thereto given to plaintiff, plus interest of $13.13 accrued to that time.
It is not contended by plaintiff that defendant has not paid over to him all commissions received on renewal premiums account.
Defendant's father, Edward Benson Scott, was a material witness in his behalf. His testimony was not taken, but there appears in the record a stipulation of counsel in lieu of the father's testimony which we here reproduce in full:
"It is Admitted that if present Edward Benson Scott, the father of Eugene B. Scott, would testify as follows: *Page 616 
"That shortly after Eugene Scott started to work for Mutual Life Insurance Company of New York he discussed with Mr. Lawton on an occasion when Mr. Lawton was in Winnsboro, Louisiana, the relationship of his son Eugene with Mr. Lawton and the company; that the manner of payment and the advancing of expenses to Eugene Scott evidenced by notes was discussed and that Mr. Lawton was advised that Mr. Scott was dubious about the advisability of his son executing notes and asked Mr. Lawton why this was necessary, and that Mr. Lawton stated that he need not worry as this was the normal procedure followed in putting new agents to work, and that if they were unable to do well enough in the job of selling insurance that the moneys advanced would be charged off, and that this happened frequently, as it was necessary for them to finance new agents in this way, and in due course a number of the agents were unable to go into the business otherwise, and some failed; and that whether Eugene made a success or not did not make so much difference as it would be worthwhile to the company to have an agent in that territory."
The contents of this stipulation, in a large measure, corroborate defendant's testimony and his contentions in the case and go far toward contradicting the testimony and the position of plaintiff that the advances made by him to defendant were unconditional loans.
When it is recalled that plaintiff was not acquainted with defendant until he sought him out in Ruston in March, 1941, and then endeavored to interest him in writing insurance for the company, the following testimony given by plaintiff, to say the least of it, is quite remarkable, to wit: "All salesmen for the Mutual Life Insurance Company of New York pay their own expenses wherever they work. At his request I personally made some loans to Mr. Scott, to be used by him in any way that he saw fit whether in selling insurance or otherwise. * * *"
It unquestionably appears from the record that plaintiff's interest in defendant sprang from a desire to promote his company's interest in that part of Louisiana assigned to defendant for his operations. He was so eager to accomplish tangible results that he was willing to take some chances in the effort to do so. He evidently believed that the chance of success warranted the risk he was willing to and did take. Had economic conditions remained normal it is highly probable the venture would have proven financially advantageous to all concerned.
[1] There are several letters in evidence written by defendant to plaintiff concerning the advances made to him and the notes given to evidence same. The contents of these letters when considered alone tend to support plaintiff's contentions rather than those of defendant, but when such contents are weighed and considered along with the testimony in the case and pertinent facts and circumstances, it is not difficult to reconcile the same with the defense urged against plaintiff's demand. In passing, it is apropos to say that defendant was young and inexperienced in business matters. This venture was his first effort to establish himself in a business way. He was not as skilled in writing letters as he would have been had he been older and more experienced. No good purpose would be subserved by elaborating upon the contents of the referred to letters and our reasons for concluding that they do not unfavorably affect defendant's position in the case.
[2, 3] It is not open to debate that persons competent to contract may qualify and/or make conditional obligations they assume. This is elemental, and when persons so covenant their contract is the law between them and must be enforced as agreed to. In keeping with this legal principle it is permissible for one loaning money to covenant with the borrower that repayment may be made only from a source or sources then in contemplation by the parties, and if the fund or funds from such source or sources prove to be insufficient to extinguish in full the loan or loans thus made, no personal responsibility thereafter attaches to the borrower. See: American Furniture Co., Inc. v. Snell, et al., La. App., *Page 617 
164 So. 478; Southern Molasses Co., Inc. v. Boutcher,172 La. 691, 135 So. 27.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.