UNITED STATES, for Use of MOSELEY, v. MANN et al.

No. 4404.

United States Court of Appeals
Tenth Circuit.

May 9, 1952.

Melvin F. Adler, Fort Worth, Tex. (George A. McCall, Weatherford, Tex., on the brief), for appellant.

W. B. Handley, Dallas, Tex., for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question in this case is whether Great American Indemnity Company is lia-

ble to J. R. C. Moseley under its bond given to K. W. Mann, pursuant to the requirements of the Miller Act, 40 U.S.C.A. § 270a et seq. Mann had a contract with the United States for the construction of a flood control project near Duncan, Oklahoma. The bond was given in fulfillment of the provisions of the Miller Act, requiring the contractor to give a bond to secure payment of labor and material claims on the job.

To enable him to perform his contract, Mann entered into a contract with J. R. C. Moseley, under which he rented certain heavy equipment from him, which he used in doing the work on the job. Mann did not have sufficient funds of his own to finance the project and meet his payrolls and other expenses on the job. He bid on the job and obtained the contract under an arrangement with a bank in which it had agreed to finance him. After he signed the contract, the bank refused to extend him credit. At that time he and Moseley had caused their contract for the lease of the rental equipment to be reduced to writing, but before it was executed the arrangement for the credit with the bank fell through. Thereafter they approached a mutual friend, Ernest Loyd, who agreed to finance Mann. Loyd agreed to finance Mann without remuneration to himself, stating only that he did not want to lose any money on the transaction. In order to obtain this credit and protect their mutual friend, certain interlineations were written into the contract, which will be hereafter noted. With these interlineations the contract was executed by Mann and Moseley.

The rental to be paid Moseley for the use of his equipment was fixed at twelve cents per yard for all earth placed in the embankment of the dam. The provision in the contract for the rental payments prior to the time Loyd came into the picture read as follows: "Rental at the rate of twelve (12¢) per yard for all of the earth to be placed in the embankment of the dam, Prairie Dale sites one and three near Duncan, Oklahoma, Invitation No. 887–49 Soil Conservation Service, Washington, D. C., and which amount of earth is estimated at 86,000 yards, such rental to be paid out of the estimate as received from the Government by Bailee, under and by virtue of said contract for the doing of that work and shall be paid by Bailee as and at the time and out of such estimates when paid, and such rentals to be paid Bailor at the Fort Worth National Bank of Fort Worth, in Fort Worth, in Tarrant County, Texas." After Loyd agreed to finance Mann and in order to protect him the following addition was made in longhand and was initialed by all three parties: "After any monies advanced by Ernest Loyd for the execution and completion of said job has been repaid to Ernest Loyd." It was agreed that all estimates paid as the work progressed should be delivered to Loyd to be disbursed by him. It is agreed that under the financing arrangement Loyd paid out $42,074.84 and that eliminating certain challenged items he disbursed in payment of legitimate labor and material claims the amount of $34,720.94. The amount due and received by Mann under the contract, which he turned over to Loyd, was $30,929.35. It is admitted that Loyd advanced and distributed in payment of legitimate labor and material claims on the project more than he received from the estimates delivered to him.

Appellees contend and the trial court held that the provisions of the contract for the payment of the amount of rental due provided this obligation should be paid only from a special fund, namely, the estimates under the contract, and that there was no personal obligation or liability on Mann's part to pay Moseley anything. From this the court concluded and held that since there was no personal liability on Mann's part to pay Moseley's claim there could be no liability under the bond given to guarantee and insure payment of all labor and material claims due on the project.

It is, of course, true as held by the court that where the language of a contract is clear and unambiguous and lends itself to only one construction, extraneous evidence and circumstances, as well as the conduct of the parties with relation to the contract, are inadmissible in determining the legal effect of the contract. But we cannot agree with the trial court that the pertinent language is so clear and

positive as to conclusively show that Mann and Moseley agreed and intended that payment should be made only out of the special fund, the amount due under the contract, and that Mann should not be personally liable in any event for the rental for the use of Moseley's equipment.

A contract should be considered as an integrated instrument having a central theme or subject matter. It has numerous provisions, conferring rights and casting corresponding liabilities upon the parties thereto. Words which standing by themselves have an ordinary and generally accepted meaning may acquire special significance in light of the general subject matter and purpose sought to be accomplished by the execution of the contract. It is for that reason that we generally look to the four corners of a written instrument and consider it in its entirety in construing and determining the rights and liabilities arising thereunder.

The court placed strong reliance on West v. Anderson, 171 Okl. 165, 42 P.2d 543 and kindred cases. An examination of the facts in that case shows that there was a clear intent that payment should be made only from the sale of oil and gas runs. The West case was distinguished by the Oklahoma Court in the later case, McCully v. McCully, 184 Okl. 264, 86 P.2d 786, where the court upon somewhat similarly related facts reached a contrary conclusion. The question has been before the courts many times in one form or another. In cases where the contract provided for payment "only" from a fund, the courts have consistently held that there was no personal liability to pay.[1] In cases where the word "only" did not appear, the courts considered outside extraneous evidence and circumstances in construing the liability.[2]

Considering the entire contract in light of the surrounding circumstances and the relationship of the parties, we do not think it was intended that payment of the rental for the equipment should be made only from the estimates and that it was intended that Mann and his statutory surety should be relieved from liability. Had this been the intent of the parties, it would have been very easy to have made it manifest by stating that rental payments should be made "only" from the estimates, as and when received.

All the parties contemplated that the estimates would be sufficient to pay all claims and leave a net profit. Mann testified that he thought he had a net profit in the contract. With that thought in mind, when Mann and Moseley drew their contract by the adoption of this provision they intended to provide for the time of payment as the dates on which the estimates were received and that Moseley would then be paid from the proceeds of the estimates. But this does not mean or compel the conclusion that Moseley looked for payment only to this fund. This is further manifested by the conduct of the parties when Loyd came into the picture. In order to enable Mann to fulfill his contract, when his financial arrangements with the bank fell through, it was necessary to bring Loyd into the picture. He was acting the good Samaritan, agreeing to finance Mann and asking only that he be made whole. To accomplish this, it was agreed that the estimates should all be delivered to him and be distributed by him. It is doubtful if Moseley would have consented to this arrangement had he understood or intended that he would be paid only from this fund. By consenting to this arrangement, he relinquished his prior right of payment from the proceeds of the estimates and took a position inferior to that of all other claims arising out of the project. Furthermore, at no time did he make any demands against Loyd or assert his right to pay-

1. Fidelity & Deposit Co. v. Andrews, 244 Mich. 159, 221 N.W. 114; Carpenter v. Elmer R. Sly Co., 109 Cal.App. 539, 293 P. 162; Tartar v. Skaggs, 184 Ky. 58, 211 S.W. 203; City of Seymour v. Municipal Acceptance Corp., Tex.Civ. App., 96 S.W.2d 814; Hodgdon v. Peet, 122 Minn. 286, 142 N.W. 808.

2. Hagge v. Drew, 73 Cal.App.2d 739, 167 P.2d 263; Public Market Co. of Portland v. City of Portland, 171 Or. 522, 130 P.2d 624, 138 P.2d 916; Lawton v. Scott, La.App., 29 So.2d 614; Keller v. Cohen, 224 Pa. 434, 73 A. 918.

ment out of this fund. It is also significant that Mann went to the attorney for the bonding company and asked him if he would consider on the part of the bonding company paying Moseley's claim and letting the amount so paid be otherwise credited. This conduct was inconsistent with the claim of no personal liability. If payment was to be made only from this fund, Mann was not personally liable and in turn his bonding company would not be liable and there would be no reason for him to ask it to pay this claim, if he felt there was no liability on his part.

Considering the contract in its entirety and taking into consideration the relationship of the parties and the circumstances under which it was executed, the provision with respect to payment from the estimates was intended to establish the time and method of payment in the first instance and was intended as additional security and not as a relinquishment of the personal liability of Mann and his surety. The interlineation for the benefit of Loyd did no more than transfer the preferred status Moseley had with respect to the estimates to Loyd.

The judgment is reversed and the cause is remanded with directions to proceed in conformity with the views expressed herein.