## Meacham Contracting Company v. City of Hopkinsville.

(Decided May 18, 1915.)

### Appeal from Christian Circuit Court.

Contracts—Municipal Contracts—Mistake in Execution of—Relief From.—Where the meaning and effect of a contract affecting private rights is fully understood by the parties, but one of them objects to it on the ground that it does not contain the real contract and shows that he was induced to execute it by the assurances of the other party that the terms of the written contract in conflict with the real contract would not be enforced, he may have it reformed to express the true intention. But this rule will not obtain in respect to a contract entered into with a municipal corporation. The party making the contract and who fully understood its meaning and effect, will not be allowed to contradict its terms by evidence of verbal agreements made with the agent of the city who was empowered only to make a written contract.

DOWNER & RUSSELL for appellant.

W. H. SOUTHALL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The city of Hopkinsville made a contract with the Meacham Contracting Company for the construction of a sewer. One clause in this contract reads as follows:

"In estimating the final cost for this work at the above unit prices, it is agreed that the city of Hopkinsville shall pay $3,000 in cash, or its proportion of the work to Water Street, and shall give as additional consideration an apportionment claim against the Illinois

Central Railroad Company, for said Railroad's proportion of the cost, for 420 feet, more or less, beyond Water Street, in accordance with the engineer's estimate, based on the unit prices as required by Ordinance No. 74, approved October 24, 1911. Should the cost of the sewer upon final estimate exceed the $3,000 appropriated by the city, and the amount apportioned against and paid by the Illinois Central Railroad Company, the excess shall be paid by voluntary subscriptions of those benefited by the sewer, or by appropriations.''

It will be observed that in this clause the city was to give to the contracting company an apportionment warrant against the railroad company for its part of the cost of the improvement, and that it was the plain meaning of this clause, as is agreed by counsel for both parties, that the contracting company should accept this apportionment claim against the railroad company in part settlement of its charge for the improvement.

It appears that the railroad company disputed its liability to pay any part of the cost of this improvement, and when upon request it declined to pay to the contracting company the apportionment claim of $1,425, assessed against it, the contracting company brought this suit against the city, seeking to recover from it the amount alleged to be due by the railroad company and which it refused to pay.

The action against the city was based on the ground that the clause in the contract before mentioned was inserted by mutual mistake of the parties to the contract, the allegation being that the written contract with this clause in it does not express the real intention of the parties and is erroneous and defective in substance in that ''it makes the plaintiff accept as an absolute and unconditional payment, on its claim against the defendant for said work, the defendant's claim against the Illinois Central Railroad Company for the portion of said work which defendant claims said railroad company should pay for. The plaintiff states and charges that it did not, in said contract, at any time, agree to take or accept the defendant's said claim against Illinois Central Railroad Company, as payment on its claim for said work against the defendant. * * * And plaintiff again states and charges that the said errors and defects occurred when said contract was reduced to writing, by the mutual mistake and oversight of the parties.'' The

averment was further made that the railroad company refused to pay the claim, and the contracting company prayed that the contract be reformed so as to make it express the true intention of the parties, and that it have judgment against the city for the amount of this claim.

The answer contained a denial of the averments of the petition, and when the case came on for hearing, the trial court submitted to a jury the issues as to whether there was a mutual mistake in the contract, instructing them that ''you will find for the defendant in this case, un-less you believe from the evidence that at the time of the making of the contract for the construction of said sewer, it was agreed between the parties that plaintiff was not to accept said apportionment warrant as part payment on the contract price for the construction of said sewer, but was to receive same only for collection, and, by mutual mistake and oversight of the parties, said conditions were omitted from said writing, and that said writing was by mistake, or oversight, made to state that plaintiff was to receive said apportionment warrant in part payment of said contract price, in which event, you will find for the plaintiff.''

It is agreed that the instructions given by the court presented correctly the law of the case, and under the evidence and instructions the jury found a verdict for the city, and the contracting company appeals from the judgment on the verdict.

It appears from the evidence, without dispute or contradiction, that after the contract containing the clause here in question had been reduced to writing, it was submitted to the chief officers of the contracting company and carefully read and considered by them. Also, that the mayor of the city, who was acting for the city in executing the contract, as well as the officers of the contracting company, fully understood its meaning and effect. This being true, it is of course manifest that the parties did not sign the contract under any mistake, mutual or otherwise, as to its contents. Nor is it claimed that any fraud was practiced by any one in procuring the execution of the contract.

The evidence, however, of the mayor of the city and the officers of the contracting company tends to show that although they knew full well that this clause was in the contract, and understood its meaning and effect, it was

agreed between the mayor acting for the city and the officers of the company that the contracting company was not to accept this claim against the railroad company in settlement, or in part satisfaction, of its charge for the construction of the sewer, but that the city should be bound and liable to the contracting company for the full amount of the contract price; and it is this agreement and understanding of the parties at the time and before the contract was signed that is relied on as constituting the mutual mistake in its execution and affording to the contracting company the relief it sought in this action.

Upon this state of facts it is earnestly urged by counsel for appellee that the court should have directed a verdict in favor of the city, as the evidence showed that no mistake whatever had been made in the execution of the contract. On the other hand, counsel for appellant argue that as the evidence of the parties who executed the contract shows that it was understood and agreed between them that the clause in the contract under which the contracting company accepted in settlement of so much of its charge as was represented by the claim against the railroad company, should not release the city from its obligation to pay the whole of the contract price, this constituted such a mistake as authorized a reformation of the contract upon the ground that it was executed by mutual mistake.

The issue submitted by counsel, and coming up in the manner stated, presents an interesting question in the law controlling the reformation of contracts on the ground of mistake. Ordinarily a mistake sought to be corrected in a written contract arises when the complaining party did not understand the meaning or effect of the words of the contract, or when something appears in the contract that it was not intended should be put into it. But here no mistake of this kind is shown. The contracting company at the time it executed the contract knew that it contained the clause it is now assailing, and understood its meaning and effect. Its plea is that it was told by the mayor of the city, who executed the contract on behalf of the city, that this clause should not have the meaning it purported to have, and that its charge for the full contract price of the work would be paid by the city, and it was only because of this agreement and understanding that it would not be obliged to

look to the railroad company for any part of its claim, that it was induced to accept the contract with this clause in it.

The authorities dealing with this question are not harmonious, some of them holding that when parties have deliberately entered into a written contract, with a full and clear understanding of its meaning and effect, neither of them will be allowed to say that the writing did not express their real intention or be permitted to vary or contradict its terms and conditions by evidence of prior or simultaneous verbal agreements or arrangements. Others hold that although the meaning and effect of the writing may have been fully understood, one of the parties, upon clear and convincing evidence of a prior or present agreement that the terms and conditions as expressed in the writing should not be enforced or would not be binding may have it reformed to express the true intention and agreement of the parties at the time of its execution.

This latter view was adopted by this court in the early case of Coger's Executors v. McGee, 2 Bibb, 321, 5 Am. Dec., 610. In that case McGee sued the executors of Coger to recover four hundred pounds, the suit being based upon the ground that a writing entered into between the parties did not express the true contract between them. It appears from the opinion that McGee understood the writing did not afford him the relief sought in his action, but he was induced to accept it in consequence of the understanding and agreement of Coger that the writing should be construed as a contract to refund to him the four hundred pounds, with interest, in case the land involved in the transaction could not be retained by McGee. In holding that McGee was entitled to the relief sought, the court said, in substance, that if a party objects to a writing on the ground that a stipulation is omitted or a condition is inserted that should not be, or because it does not conform to the agreement, and the other party assures him that the matter in controversy will be arranged to carry out their prior and present understanding of the contract, the complaining party will be entitled to relief.

Other illustrative cases on the subject are: Ware v. Cowles, 24 Ala., 446, 60 Am. Dec., 482; Stevens v. Cooper, 1 Johns. Ch. (N. Y.), 425, 7 Am. Dec. 499; Rearich v. Swinehart, 11 Penn. State, 233, 51 Am. Dec.,

540; Dwight v. Pomeroy, 17 Mass., 303, 9 Am. Dec., 148; Oliver v. Oliver, 4 Rawle (Penn.), 141, 26 Am. Dec., 123; McElderry v. Shipley, 2 Md., 25, 56 Am. Dec., 703; Martin v. Hamlin, 18 Mich., 354, 100 Am. Dec., 181. See also Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 854.

If this were a case between private individuals involving private rights, we would follow the rule laid down in Coger v. McGee, but we do not think the equitable principle announced in that case should be allowed to control this one. The mayor of the city was empowered by the council to execute this contract, and it does not appear that the council at any time consented or agreed that the contract as written should be construed otherwise than according to its terms.

The mayor was authorized to execute a written contract, and when he had executed such a contract his authority to act for the city ended. The verbal arrangements or agreements between the mayor and the officers of the contracting company in conflict with the writing were not binding on the city as it did not authorize or consent to them.

Parties who make written contracts with municipal corporations or public bodies, with a full and clear understanding of the meaning and effect of the contract at the time it is entered into, should not be permitted to vary or contradict the terms of the contract as written, after it has been performed, upon the ground that the agent of the public authority told them or verbally agreed with them that they would not be bound by certain clauses and conditions in the writing. It would be a dangerous doctrine to recognize the right of an agent of a city, who was authorized by its council to enter into a written contract, to vary or contradict the terms of the writing by verbal agreements made with the other contracting parties that the written contract, or some portions of it, would not be binding or enforcible. If the mayor, as in this case, or some other officer or agent in other cases, who was empowered to enter into a written contract on behalf of the city that was fully understood by the other contracting party, could be permitted to aid the other party in altering the terms of the writing by verbal agreements, the security of many public and municipal contracts would be endangered, and the temptation to set up other contracts in their place might often result in the city finding itself bound

by a contract that it did not authorize and would not have entered into. The safe rule is to require persons, who enter into written contracts with municipal corporations, the meaning and effect of which they fully understand, to abide by the writing unless they can obtain relief from its provisions through the municipal authority—in this case the city council—empowered to grant relief.

We think the motion for a peremptory instruction should have been sustained. Wherefore, the judgment is affirmed.