## Eastern Gulf Oil Co., et al. v. Lovelace, et al.

(Decided May 21, 1920.)

## Appeal from Lee Circuit Court.

1. Reformation of Instruments—Mistake and Fraud.—If by mutual mistake of the parties, or a mistake on the part of one, and fraud or deceit on the part of the other, a written contract does not in its terms express the intention or purpose of the parties in executing it, a court of equity, on sufficient evidence, will reform it so as to conform to such actual intent and purpose. And this is true, whether the mistake be one of fact or of law.

2. Reformation of Instruments—Mistake and Fraud—Relief.—To obtain such relief it must be made to appear that the deluded parties were ignorant of, or under some misapprehension concerning, matters present or past, it not being sufficient that a mistake existed as to the future effect of the contract.

3. Reformation of Instruments—Equitable Relief.—Such relief is exclusively cognizable in equity, and the issue, which was on the ordinary side of the docket, should have been transferred to equity pursuant to a motion made for that purpose; and it was likewise the duty of the court to sustain a motion to file a pleading alleging and relying upon the mistake, it being otherwise unobjectionable.

4. Reformation of Instruments—Equitable Relief—Error to Submit Action to Jury.—It was error for the court to submit to the jury the issue of mistake, or the construction of the writing involved, since these questions are for the determination of the judge sitting as a chancellor.

5. Limitation of Actions—Personal Defense.—The statute of limitation is a personal defense, and unless relied on by a pleading it will not be available.

6. Limitation of Actions—When Defense Not Barred.—Where the defense relied on, issues from and grows out of the cause of action declared on, it will not be barred as a defense, although it would be if relied on to obtain affirmative relief.

JOHN A. JUDY, ROBERT H. WINN, EDWARD C. O'REAR and SAMUEL H. HURST for appellants.

H. C. GILLIS, M. M. LOGAN, BROWN, LOGAN & MYATT, H. S. McGUIRE, C. F. SPENCER and RYLAND C. MUSICK for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit was filed as an ordinary action on October 25, 1918, by the heirs of John S. Robinson, deceased, against appellant, Eastern Gulf Oil Company and the Millers Creek Lumber Company, in which plaintiffs averred in their petition that they were the owners of an

undivided one-half interest in a described tract of land in Lee county, containing one hundred acres, and that defendants, who owned the other one-half interest, had wrongfully converted and appropriated to their use, a large quantity of oil extracted from their land, amounting, as alleged, to the sum of $............................, and the relief sought was to ascertain the amount of oil so alleged to have been wrongfully appropriated, and a judgment in favor of plaintiffs against the defendants for its value.

At the appearance term of the court the defendant, Eastern Gulf Oil Company, a foreign corporation, filed its petition and entered motion for removal of the cause to the United States District Court for the Eastern District of Kentucky, which motion was sustained, but the federal court remanded it to the state court, upon motion made for that purpose. The next term of the state court following the remanding order was in May, 1919.

On February 11, 1919, plaintiffs filed their amended petitions making the appellee, Frank Phillips, a defendant, alleging that he was claiming some interest in the oil, and that he had been jointly engaged in extracting it, and the same relief was prayed against him. On March 7, 1919, by a second amended petition the appellees, W. C. Taylor, M. C. Clay and J. W. Clay, were made defendants and in that pleading it was alleged that the Millers Creek Lumber Company had sold to them "a certain interest in and to the oil rights in the land described in plaintiffs' petition," and that the defendants, Taylor and the two Clays, were claiming to be the owners of such interest, and that they had, in conjunction with the other defendants, committed the wrongs complained of in the original petition, and the same relief was sought against them.

At the May term, 1919, and on the 19th day of the month, the Millers Creek Lumber Company answered, denying the allegations of the petition and alleging that it had long since conveyed all interest which it had in and to the land to the defendants Taylor and the two Clays, and two days thereafter plaintiffs dismissed their petition as to it. The other defendant, Eastern Gulf Oil Company, answered, in which it denied the plaintiffs' title or ownership in and to the land, or any of the minerals thereunder, and claimed entire ownership of the minerals in itself and its co-defendants.

ˉ ·Phillips, Taylor, and· the two Clays filed a ·joint· answer on May 23, 1919, being .the appearance term for which they were summoned, and· in addition to making the denials above, they pleaded an estoppel as· against plaintiffs, and in another paragraph sought· to remove plaintiffs' alleged title as a cloud upon defendants' title, and in the fifth paragraph alleged that plaintiffs claimed their interest under and by. virtue of a· certain writing executed by the Millers Creek Lumber Company to John S. Robinson, their ancestor, on May 6, 1909·; that defendants claimed through and were in privity with the Millers Creek Lumber ·Company and that plaintiffs' ancestor, John S. Robinson, procured the execution of the writing of May 6, 1909, by representing· that it was only for the purpose of releasing a lien upon the one hundred acres involved, which was a part of a larger tract of two thousand acres sold to Robinson by the Millers Creek Lumber Company on January 4, 1908, and upon which entire tract a lien for the unpaid purchase money of twelve hundred dollars was retained, and that the consideration of one hundred and seventy-five dollars expressed in the writing under which plaintiffs claimed was not the true and correct consideration for the execution of that document.  · ·      ·    · .

Upon the filing of the above· answers the defendants entered motion to transfer the case to the equity docket, which motion was overruled. A· demurrer was filed to the fifth paragraph of the answer· of Phillips and others, which was sustained May 29, 1919, and two days thereafter the defendants tendered and· offered to file their amended answer in which they alleged in substance that the writing of May·6, 1909, under which plaintiffs claimed their interest sued on, by mistake of the draftsman, and the mutual mistake of all the parties thereto, failed to incorporate or express the real agreement between the parties, and failed to express the true consideration for its execution, and that in so far as it might be construed to convey to John S. Robinson any interest in the land it referred to, or the minerals thereunder, or to accomplish any other purpose than releasing of a vendor's lien, it failed to express the intention of the parties and was without consideration.·

Upon objection the court declined to permit that amendment to be filed, to which the defendants objected and excepted, and then the Millers Creek Lumber Company, an original defendant who had been dismissed

from the suit on plaintiffs' motion, offered its intervening pleading in which it alleged the same facts set forth in the rejected pleadings with reference to the execution of the paper relied on by plaintiff of date May 6, 1909; that it was interested in the subject matter of the suit because of being a remote vendor and liable on its warranty, and it asked that the agreement be reformed so as to express the true intention of the parties and their purpose in executing it. The court declined to permit that pleading to be filed, to which objections and exceptions were reserved.

The court again overruled a motion to transfer the case to equity, and also overruled a motion to continue the case because of the enforced absence of the defendant, M. C. Clay, because of sickness, who as manager of the Millers Creek Lumber Company had personally conducted the transactions between it and J. S. Robinson resulting in the writing of May 6, 1909, and because of the enforced absence of defendants' counsel; but the motion was overruled and the court empaneled a jury, over the objections of the defendant, and by its instructions submitted to the jury for determination not only the construction of the writing constituting plaintiffs' source of title, but also the construction of two other deeds, which defendants claimed operated to convey the interest, if any, of J. S. Robinson, which he may have obtained under that writing. The jury by its verdict construed all of the papers against the defendants and returned a verdict in favor of plaintiffs, upon which the court adjudged them to be the owners of a one-half undivided interest in all the minerals under the one hundred acres involved, and complaining of that judgment, the defendants prosecute this appeal.

We think the above brief recitation will disclose to the trained practitioner a number of errors which are sufficient to authorize a reversal of the judgment. but since all of them except the one concerning the alleged mistake relating to the execution of the writing of May 6, 1909, raise only questions of practice, we have concluded not to discuss them, but to address ourselves briefly to the matters relating to the execution of the writing referred to.

Perhaps there is no rule of practice better settled than the one permitting equity tribunals to reform written contracts, including conveyances of land, so as to permit them to express the real intention and purpose of

the parties in executing them, which in their executed form they fail to do because of fraud or mistake. In more modern times such relief will be granted where the mistake is one of law, as well as where it is one of fact. But all of the authorities hold that a mistake, either of law or of fact, by one of the parties alone, will not be sufficient to authorize a reformation unless it is accompanied by some fraud, deceit or concealment on the part of the other party to the contract. However, equity will grant such relief without fraud where the mistake is mutual, although it must be one produced from ignorance of matters of law or of fact existing at the time, and not one growing out of conditions arising in the future. It is also well settled that the right to the relief is not confined to the immedate parties to the instrument, but may be resorted to by those standing in privity with them. If the writing is precisely as the parties intended it, and has the legal effect which they intended, there can be no reformation because of an alleged mistake on the part of one of the parties in failing to execute the particular character of contract which would have been most beneficial to him.

The grounds supporting the doctrine are that it is the office of equity to do justice between litigants, and justice requires that the specific purpose agreed to be accomplished by the parties in the execution of a contract is the one that should be enforced. These doctrines as announced by text writers and the courts of the various states will be found stated and discussed in 23 R. C. L. pages 213-232; notes to the case of Williams v. Hamilton, 65 American State Reports, pages 481-522, and notes to the case of Steinmeyer v. Schroeppel, 117 idem., pages 227-246. The more recent Kentucky cases which adopt and apply the general principles above are Lindenberger v. Rowland, 158 Ky. 760; Ison v. Sanders, 163 Ky. 605; Meacham Contracting Company v. City of Hopkinsville, 164 Ky. 703, and Scott v. Spurr, 169 Ky. 575.

Cases analogous in principle are those authorizing the reformation of fire insurance policies so as to conform to the true contract entered into between the parties, and cases permitting deeds, absolute on their face, to be converted by extrinsic proof into a mortgage, so as to conform to the intention and purpose of the parties in executing them. Cases of the latter class are Hobbs v. Rowland, 136 Ky. 197; Castillo v. McBeath, 162 Ky.

382; Smith v. Berry, 155 Ky. 686; Vaughan v. Smith, 148 Ky. 531, and Leibel v. Tandy, 146 Ky. 101.

In order to reform a deed intended by the parties to be a mortgage, the cases last cited overruling the case of Munford v. Greene, 103 Ky. 140, hold that it is not necessary to allege or prove either fraud or mistake. A late case authorizing the reformation of an insurance policy is that of Cecil v. Kentucky Livestock Insurance Company, 165 Ky. 211.

From a reading of the authorities, *supra,* we are convinced that the defendants in this case are entitled to have the writing of May 6, 1909, reformed so as to express the true intention of the parties in executing it, if, upon proof heard, it fails to do so. We need not here discuss the quantum of proof necessary for that purpose, since we have concluded that the case should have been transferred to equity, and the proof upon that issue taken according to equity practice and the question adjudicated in the regular way by the chancellor, it being entirely beyond the province of a jury to pass upon such questions.

The paper in question was prepared at the request of J. S. Robinson by the deputy county court clerk, and down to and including its attestation it is an absolute deed to a one-half undivided interest in and to the one hundred acres of land in controversy When sent to the president of the Millers Creek Lumber Company for execution he was not altogether satisfied with its wording, and he added in script at the foot thereof, and above the signature, this clause: "We release all purchase money liens we have on the land J. S. Robinson sold to John Barnett on Coves fork, Lee county, Kentucky," and with that clause added the paper was executed and delivered to Robinhon, who accepted it, and so far as the limited amount of proof which the court admitted shows, he never claimed any interest in the land up to his death several years thereafter; neither did any of his heirs, although living in the community, claim any such interest until the appellant oil company had drilled five or six producing wells on the land.

We refrain from expressing an opinion as to the effect of the paper in controversy if construed upon its face only, since its language affords room for two different and distinct constructions. If there existed no other equitable consideration for the admission of extraneous proof to show the intent and purpose of the parties in

executing it, the ambiguity appearing upon its face would afford such grounds.

It is insisted, however, that conceding defendants' right to raise the question as to the effect of that paper, they have no right to reform it, because more than ten years elapsed after its execution until the filing of their answer seeking such reformation. Two answers may be made to this objection, they being (a) that there is no plea of limitation interposed, and (b) if there had been it would not have been available because defendants are not seeking affirmative relief but are attempting only to defeat the effect which plaintiffs seek to give that writing and which is the foundation of their claim. Cases supporting proposition (a) are Davies' Exor. v. City of Louisville, 159 Ky. 252; Merritt v. Cravens, 168 Ky. 155; Graziani v. Ernst, 169 Ky. 751; Taulbee v. Hargis, 173 Ky. 433; Smith v. Young, 178 Ky. 376, and Johnson v. Johnson, 183 Ky. 421. Cases and authorities supporting proposition (b) are 17 R. C. L. 745; Weakley v. Merriweather, 156 Ky. 304; Aultman-Taylor Co. v. Meade, 105 Ky. 583; Luscher v. Security Trust Co., 178 Ky. 593, and Charles I. Hudson & Co. v. Wood, 183 Ky. 16.

It is contended by defendants that if the paper dated May 6, 1909, should be construed as an absolute deed, and not subject to reformation, still plaintiffs are not entitled to maintain the suit because J. S. Robinson conveyed the interest he obtained under that deed to D. B. Pendergrass by deed which he executed on December 8, 1910. We have closely examined and thoroughly considered the latter deed and find nothing in it supporting defendants' contention. It would unduly lengthen this opinion and serve no useful purpose to set out and analyze its terms. Suffice it to say that the deed to Pendergrass is susceptible of no other construction than a conveyance of a one-half undivided interest in the oil under the one hundred acres involved in this suit.

Neither are we convinced that J. S. Robinson by accepting the deed executed to him by the Millers Creek Lumber Company, of date December 7, 1910, parted with or estopped himself or his heirs to claim the interest he then had, if any, in the minerals involved in this suit. That deed purported to convey only the balance of the timber on the two thousand acres conveyed to Robinson by the same vendor, on January 4, 1908, and it could not, by reservation alone, divest the vendee Robinson of any

interest he already had in the land described therein. The case of Creekmore v. Bryant, 158 Ky. 166, relied on by defendants, is not in point, and does not support their contention as to the effect of the deed of December 7, 1910.

Since there has been no proper trial of the equitable issue involved, we have concluded that the interest of all parties concerned would be bettter subserved by a remanding of the case, for final determination by the chancellor after the case shall have been transferred to equity. Holloway v. Brown, 181 Ky. 716; United Iron Works Co. v. Watterson Hotel Co., 182 Ky. 113.

Wherefore, the judgment is reversed, with directions to set it aside, to transfer the case to equity, to overrule the demurrer to the fifth paragraph of defendants' answer, to permit the rejected pleadings to be filed, and for further proceedings consistent with this opinion.