## Rockcastle Gas Company v. Horn.

(Decided December 9, 1931.)

W. R. McCOY and FRED VINSON for appellant.

J. B. CLARK for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON.—
Reversing.

This appeal brings for review the pleadings, evidence, and instructions in the trial of an action in the Martin circuit court, wherein James Horn was plaintiff, and the Rockcastle Gas Company defendant.

In his petition James Horn set out the execution and delivery by him to B. E. Cunningham and J. M. Ickes, a lease for oil and gas on the property therein described, which lease was dated October 1, 1926, and was assigned to the Rockcastle Gas Company on February 2, 1927. It is alleged that by the terms of the lease "the lessee was to pay the lessor for each and every well drilled upon said premises, the sum of $50.00 each three months"; that the Rockcastle Gas Company had drilled on the land two wells, which produced gas in paying quantities, and that it had been marketing and using the gas for more than two years; that by the terms of the lease it was indebted to the plaintiff "a total of $800.00 as well rental."

By an amended petition it was alleged that the Rockcastle Gas Company "had drilled only one well upon the tract covered by the lease," and that by its terms it was indebted to plaintiff in the sum of $600. A copy of the lease was filed as as exhibit with the amended petition.

To prevent a recovery, the Rockcastle Gas Company filed an answer traversing the petition and amended petition. By the second paragraph, it alleged that by the lease "it agreed to pay to plaintiff $50.00 each three months for each well drilled on the property for gas as marketed." It was further alleged that the gas from it had not been marketed, and that by the express provisions of the lease it was not liable until the gas was marketed from the well. By reply Horn alleged that at the time the lease was executed and delivered by him, it was represented to him that the $50 each three months for each well drilled was to be paid if the well was a producing well, and that the clause in the lease that "the lessee was to pay the lessor from such gas well from the time the oil and gas is marketed, the sum of $50.00 each three months" was fraudulently inserted in the lease. By rejoinder, the Rockcastle Gas Company traversed the allegations of the reply, and further alleged that the territory in which the gas well was drilled was "wildcat territory," a number of miles away from the gas fields, and that no pipe line was in the immediate vicinity of the well; that it had made every effort to secure a pipe line, but had failed to do so; that, before it could make pipe line connections for its gas, it was necessary or required that the well or its gas field produce a certain amount of gas; that it had developed its territory since it had discovered the presence of gas as rapidly as possible, and prosecuting development with diligence, and was making every effort to market the gas from its wells, and that until such time as it could market the gas, it was not liable by the terms of the lease for the royalty rental. It alleged that no part of the gas from the well was being consumed off of the leased premises, and that it was receiving no income or profit therefrom; that it was equally interested with the plaintiff in the marketing of the gas from its well.

On a trial by jury, a verdict was returned in favor of Horn for the sum of $600. It appears from the record that on the return of the verdict, on motion of Horn, a judgment was entered on the verdict for $400.

It is shown by the evidence in behalf of the plaintiff Horn, the appellee here, that, in about the year 1927 or 1928, the well involved was drilled on the land covered by the lease, and it was a producing well; "that no royalty as provided in the lease for oil had been paid to him." He testified that gas had been used from the well, but he did not state that the gas had been marketed. He claimed that immediately after the well was drilled the company ceased to pay the acreage rental. He stated that at the rate of $50 each three months per well there was due him per the terms of the lease $600.

In his behalf, Moses Kirk testified substantially to the same facts brought to the jury by the testimony of the appellee. He stated that the gas from the well was used by the appellant "at another well on the land owned by Horn."

The evidence heard in behalf of appellant established the fact that the well involved was "drilled in" in March or April, 1927; that there had been no gas marketed from the well; that it had been used to drill a well "on the Jim Horn lease"; that "no gas was taken from that well onto any other land than the land of Jim Horn." It was shown that the well on appellee's land was nine or ten miles "from any suction line or pipe line in that section"; that the well produced probably "three and one-half million feet" per day; that it had been so doing less than one year. For a year after it was drilled it produced less than one million feet per day. The appellant diligently sought and tried to get a market for the gas. For that purpose it had endeavored to make arrangements with the United Fuel Gas Company, Libby Owens, Ky. & W. Va. Gas Company, and the Inland Gas Company by which it could market its gas. Some of them required a production of five million feet per day before they would contract for it. Through the instrumentality of brokers and buyers, it had made an effort to obtain a pipe line to its well, but had been unsuccessful. There is a discharge line within two and a half or three miles of its lease. It is shown by the testimony that "it would not be possible to take gas from the well and place it in the discharge line." The line pressure was too high for the rock pressure, and gas will not get into the line.

Without a further detailed statement of the evidence, it is apparent from appellee's own testimony that, if the

appellant had requested a peremptory instruction at the close of the testimony in his behalf, it would have been the duty of the court to have given it, to find for the appellant. Nelson v. Black Diamond Mining Co., 167 Ky. 676, 181 S. W. 341; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630. Instead of asking a peremptory instruction, the appellant requested the court to instruct the jury in substance that, if it had not marketed the gas from its well, then in that event it should find for it. The appellant by offering this instruction waived its rights to insist, in this court, for a peremptory instruction. Saunders v. Armour & Co., 220 Ky. 719, 295 S. W. 1014. The instruction offered by appellant was authorized by its pleading and evidence, and should have been given. Edge v. Ott, 151 Ky. 672, 152 S. W. 764. The court refused to give it to the jury. It instructed the jury that,

> "If it believed from the evidence that if defendant drilled the well upon the property mentioned (and it was conceded by both parties that it had drilled it) and that within a reasonable time after the well was drilled gas was found in paying quantities and it failed to pay the royalties as provided in the lease, the law is for the plaintiff and the jury will so find."

The appellee in his petition predicated his right to a recovery on the terms of the lease. He did not allege, nor attempt to prove, that appellant had either in bad faith, or by reason of negligence, failed to market the gas from the well. A mere reading of the petition is sufficient to convince the mind that the appellee was not seeking to recover damages of appellant for a breach, or violation, of any provision of the lease, nor did he attempt to prove a breach or violation of its terms or provisions other than the royalty rental had not been paid. The petition substantially alleged a promise to pay $50 every three months for each gas well, and the failure of the appellant to pay it as it had agreed in the lease so to do. Yet the court by its instructions authorized the jury to return a verdict for appellee, if it, within a reasonable time after the well was drilled and gas was found in paying quantities, failed to pay the royalty as provided in the lease, to find for appellee. Neither the pleadings nor the evidence authorized the giving of this instruction. It should not have been given. It is a rule of practice that,

when a court comes to instruct a jury in a civil case, he should confine his instructions to the issues made by the parties in their pleadings and which are supported by the evidence. Unless an issue is made by the pleadings and sustained by the evidence, the court should not instruct the jury concerning it. Edge v. Ott, supra; Bowling v. Archer, 157 Ky. 540, 163 S. W. 477; L. & N. v. Moore, 150 Ky. 692, 150 S. W. 849; Stiles v. Lile, 203 Ky. 225, 262 S. W. 18; Premier Royalty Co. v. Cumberland Producing & Refining Co., 195 Ky. 203, 241 S. W. 840; McNeil v. Choate, 197 Ky. 682, 247 S. W. 955.

The express language of the lease which appears to have been read to the jury is that the lessee ''was to pay for each gas well from the time the gas is marketed, the sum of $50 each three months.'' It was the $50 each three months for each gas well that the appellee sought in his petition to recover. The parties to the lease were competent, and had the right and power to agree on and insert any provision in the lease they desired. Tartar v. Skaggs et al., 184 Ky. 58, 211 S. W. 203. Having done so, in the absence of an allegation and proof of fraud or of mutual mistake, authorizing its reformation by a court of competent jurisdiction, the parties thereto are bound thereby. The party seeking damages for the breach of an oral contract which he claims was omitted from the written contract by fraud or mutual mistake of the parties, the proper practice is to seek a reformation of the contract for fraud or mutual mistake and then seek damages for its breach as reformed. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749. Relief for reformation of an instrument is exclusively cognizable in equity. E. G. O. Co. v. Lovelace, 188 Ky. 238, 221 S. W. 544.

Until the gas is marketed by appellant or it fails to market it by reason of its bad faith, or failure to exercise ordinary care to do so, the appellee is without right to recover the $50 each three months for each gas well as provided in the lease, in the absence of a reformation of the lease.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.