## Southeastern Gas Co. v. Estepp.

(Decided Nov. 20, 1936.)

(As Modified on Denial of Rehearing June 18, 1937.)

148

KIRK & WELLS for appellant.

HOWES & WALKER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

James Estepp recovered a $200 judgment against the Southeastern Gas Company. It has filed here a copy of the record and has moved for an appeal.

This litigation grew out of a lease of a 75-acre tract of land for oil and gas. A gas well was developed, and Mr. Estepp sued for the following rentals:

(a) Rentals from Sept. 5, 1928 to Sept. 5, 1929.$100.00
(b) Rentals from Sept. 5, 1933 to Sept. 5, 1934.  100.00
(c) Rentals from Sept. 5, 1934 to Sept. 5, 1935.  100.00

The Southeastern Gas Company pleaded the five-year statute of limitations (Ky. Stats. sec. 2515) in bar of the plaintiff's right to recover on claim (a) which was first asserted on November 14, 1934, denied liability on claims (b) and (c), and asserted a counterclaim for $28.33, covering rentals paid from May 18, 1933, to September 5, 1933.

The trial court gave judgment against the Southeastern Gas Company for claims (b) and (c) and did not allow to the Southeastern Gas Company its counterclaim.

### Claim (a).

In the judgment the trial court said this of claim (a):

"It is further adjudged that the plaintiff recover nothing for the year from September 5, 1928, to September 5, 1929, it appearing to the satisfaction of the court that they have been paid for said period."

After going over the evidence, we have concluded that this year's rental has not been paid. We have also concluded this is not barred by the five-year stat-

ute of limitation (section 2515), but as this is an action upon a written contract, the applicable limitation is the fifteen-year statute (section 2514). The Carroll Oil & Gas Company was operating this property the larger part of the year 1929, but during that year it assigned its lease to the Southeastern Gas Company by a contract containing this:

> "The party of the second part hereby assumes and agrees from and after midnight, June 20, 1929, to pay the rentals and royalties * * * to accrue or remaining effective from and after said date."

Therefore, the Southeastern Gas Company must pay the royalties of $20.83 accruing after June 20, 1929; the remaining $79.17 is a claim to be asserted against the Carroll Oil & Gas Company.

Claims (b) and (c) and the Counterclaim.

These all depend on the same thing (the obligation, if any, to pay rentals after May 18, 1833), hence we shall discuss them together, for they all depend upon this provision of the lease:

> "Should gas be found in paying quantities the lessee agrees to pay $100.00 each year for the produce of each well while the same is being sold off the premises."

A well producing gas in commercial quantity was developed on this lease. The lessee contracted with the Central Kentucky Natural Gas Company for the sale of the gas to it and for a number of years it took the gas produced by this and other wells in this field, and the lessee paid its rentals. To enable it to get this gas, the Central Kentucky Natural Gas Company installed a pumping plant or compressor at a place called Redbush. The evidence shows these wells have not sufficient pressure of their own to deliver gas into the lines of their own force. They must be pumped to make them produce.

In the contract made by the lessee with the Central Kentucky Natural Gas Company the latter company agreed "to take and pay for all of the natural gas that is produced from said wells and delivered into second party's pipe line, under the provisions of this agreement. It is understood, however, that said gas is sold and will be taken in its natural state at the natural pressure of the gas flowing from said wells, and dis-

charging into second party's suction line against the varying pressures from time to time maintained thereon. * * * Party of the second part agrees that in the event that it shall install low stage compressors in the Redbush field, that the gas delivered by the party of the first part shall be delivered into the low or suction side of said compressors."

Nowhere did the Central Kentucky Natural Gas Company obligate itself to keep this pump or compressor at Redbush in continuous operation and on May 18, 1933, it stopped this pump, and, as a result thereof, no gas was thereafter taken from this field and none from Mr. Estepp's well. This pump was not started again and the marketing of gas from this field was not resumed until January 7, 1936. This brings us to the principal question in this case, which is this: Is a lessee, which has been marketing gas from a developed gas well that produces gas in commercial quantity, and which has been paying rentals therefor, after losing its market through no fault of its own, compelled to continue paying rentals before finding another market and while without fault of its own unable to market the gas? The answer is "No."

Ordinarily this question would be one of great importance, calculated to make a court pause and consider, before giving an answer, and we are advised in brief this appeal is prosecuted as a test case and that many other cases are pending that will be affected by our ruling in this one and we find, after making an extensive search, an almost total want of precedent for our guidance and the learned counsel who have briefed this case for these parties, and whose briefs show no lack of labor and research, have furnished us practically no help, and we find ourselves on an uncharted sea, hence we have pondered long over this question and have prepared the above answer after much reflection.

The general depression which came over this nation in the year 1929, and which seems so loath to leave, has had all sorts of repercussions, has given rise to various new questions, and this is one of them.

We must remember this is a suit on this lease for its enforcement, and not a suit for its reformation; hence we must take it as it is written, and construe it.

The situation of these parties after this market was lost on May 18, 1933, is not unlike the situation in which the parties were after the well was developed and before a market had been found, hence upon the authority of Rockcastle Gas Co. v. Horn, 241 Ky. 398, 44 S. W. (2d) 273, and Swamp Branch Oil & Gas Co. v. Rice, 253 Ky. 733, 70 S. W. (2d) 3, we find the Southeastern Gas Company was not required to pay rentals after May 18, 1933, until, in the exercise of necessary diligence, it found another market for this gas, as the evidence indisputably shows it was diligently endeavoring to find a new market or to reopen the old one. We find what we have said here is supported by what we said in Muncey Coal Mining Company v. Muncey, 206 Ky. 638, 268 S. W. 293, and Givens' Ex'rs v. Providence Coal Co., 60 S. W. 304, 22 Ky. Law Rep. 1217. The expression in the lease, "while the same is being sold off the premises," means just what it says, where failure to sell is not due to fault of lessee. Therefore the court erred in not allowing Estepp $20.83 upon his claim (a), in giving judgment against the Southeastern Gas Company upon claims (b) and (c), and in failing to give it a judgment against Mr. Estepp upon its $28.33 counterclaim for $7.50, the balance due it after deducting the $20.83 due Estepp on his claim (a). This counterclaim represents rentals that had been paid in advance and covers the period from May 18, 1933, to September 5, 1933. In Wells v. Shadoin, 202 Ky. 456, 260 S. W. 12, excess rentals had been paid in advance and we held the lessee was entitled to have credit therefor, hence in this case we can see no good reason the asserted counterclaim should not be allowed. The Southeastern Gas Company is entitled to a new trial to be had in conformity to this opinion.

Motion for appeal sustained, appeal granted, judgment reversed on both original and cross appeal, and new trial awarded.