[Civ. No. 3867. Second Appellate District, Division Two.—July 28, 1922.]

CHARLES F. REUTER et al., Respondents, v. SAMUEL W. GAUDREAU, Appellant.

[1] HIGHWAY — CHARACTER OF — FINDINGS—EVIDENCE.—In this action to enjoin defendant from passing across the land of plaintiffs, the evidence supports the findings to the effect that there is no public road across the land of plaintiffs and that defendant never acquired a prescriptive right to pass over it.

APPEAL from a judgment of the Superior Court of San Bernardino County. Pat R. Parker, Judge, Presiding. Affirmed.

The facts are stated in the opinion of the court.

A. S. Maloney for Appellant.

McNabb & Hodge for Respondents.

WORKS, J.—This action was commenced for the purpose of enjoining defendant from passing across the land of plaintiffs. Defendant claims the right to cross the land upon two theories: First, that there is a public road tra-

versing the property, the road having been created by pre-
scription or implied dedication; second, that defendant has
himself acquired a prescriptive right to pass over the land
if the road which is evident on the premises be not a pub-
lic road. The trial court found against defendant upon
each of these theories and rendered judgment for plain-
tiffs. Defendant appeals.

[1] Appellant contends that the evidence does not sup-
port the findings of the trial court to the effect that there
is no public road across the land of respondents and that
appellant never acquired a prescriptive right to pass over
it. The complaint was filed in October, 1920. The land
of respondents was originally settled upon by one Doyle
in 1905, it then having been a part of the public domain.
Doyle never perfected his title to the property, having died
soon after he settled upon it, apparently in the same year.
The place appears to have had other occupants afterward
during a part of the time and it was homesteaded in 1913
by one Balsom, who sold it several years later to respond-
ents. The property was fenced by Doyle at the time he
went upon it and he maintained a gate at the place where
appellant claims a public road started across it and toward
certain land on which appellant resided at the time this ac-
tion was commenced. One McNabb, who was on the land
during Doyle's residence there, testified than a chain and
padlock were then on the gate, although the gate was not
actually locked at the time of his visit. He said further
that at that time the only evidence of a road on the place
was from the gate to a barn which Doyle had erected and
that the land beyond the barn "was under virgin brush."
One Meyer, a forest ranger, testified that in 1910 there was
no road across the property, but that there "seemed to be
some wagon tracks." Balsom testified that in 1913, when
he took up the land, there was on it a "part of a road up
through an old vineyard that was on the place at the time,"
that it ended at the farther side of the vineyard, and that
the country beyond was rough and brushy, with no evi-
dence of a road through it except "a wagon track that a
pipe had been taken up to bring water down." He also
said that the gate at which the alleged road entered the
property was usually kept closed by him. Appellant's
predecessor in interest in the land upon which appellant

resides beyond the land of respondents was one Brown, who settled upon it in 1914 or 1915, according to the testimony of Balsom and of other witnesses. Balsom further testified: "Q. And was there anything said by Mr. Brown when he came on the property at that time about his passing over it to you? A. The first time I saw Mr. Brown when he came on there, he asked me if I would give him permission to go up in the canyon beyond. Q. And you gave him permission, did you? A. I gave him permission. Q. And did he ever at any time after that during the time that you lived on the ranch, or that he lived on his ranch, did he ever make any claim of right of way across there as a matter of right? A. No, sir. Q. Did he at any time say anything about that matter after that first time? A. No; beyond any time I met him going on there he would either make some apology or say that he had my permission to go on there. Q. He did mention it at various times? A. I don't think I ever met him that he didn't mention that he was crossing my land. Q. He didn't mention that he had any rights on there? A. No." As already remarked, appellant acquired the property of Brown directly from that individual. Appellant first crossed the land of respondents, then still held by Balsom, in July, 1915, and took up his residence on the land acquired from Brown in January, 1916. We take up again the testimony of Balsom: "Q. And after Mr. Gaudreau acquired Mr. Brown's interest, did you have any conversation with Mr. Gaudreau about the rights over this road? A. Yes, sir; I think it was about a month after Mr. Gaudreau came there I asked him if he knew he was using my road, and he told me yes he did. Q. And did he say anything else at that time; did he tell you how he knew? A. He told me Mr. Brown had told him it was my road. Q. And did you have any other conversation with him regarding the matter at any time? A. Not at that time, not until a month or five weeks before I sold the place [to respondents]. Q. And what took place then? A. I told him again he was using my road, and asked him if he would be willing to make some regulation so he would not get the right of way over the road, and he told me yes he would be willing to make any reservation or do anything that was right. . . . Q. Did you know of the notice being posted at the entrance, near the

entrance, where this road turns from the public highway to go through the property with reference to it being a private road or no trespassing? A. Yes, sir. Q. Who put that up? A. I did. Q. When? A. 1917. . . . Q. And this conversation you had with Mr. Gaudreau was with regard to making some arrangement and paying you for the right to go over? A. Yes. Q. What year was that, Mr. Balsom? A. 1920, or the end of 1919; . . . Q. Now, do you know of the public using this road as a public road at any time during the time that you lived there? A. No, sir. Q. And the only use that was made of it that you know of was the use that was made by Mr. Brown as you have indicated, and that by Mr. Gaudreau, as you have indicated? A. Yes, sir. . . . Q. Did he [appellant] ever at any time during the time that you lived on the ranch, and after you filed on the ranch and up to the time you transferred it to plaintiffs, did he ever at any time claim to you that he had a right to use that road? A. No, never." This evidence is amply sufficient to support the findings to which objection is made.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.