[Civ. No. 4218.   Third Appellate District.—November 14, 1930.]

G. A. CARPENTER, Respondent, v. ELMER R. SLY COMPANY (a Trust Estate) et al., Defendants; RICHARD E. EAGAN, Appellant.

E. O. Leake for Appellant.

Newcomb Condee, Vernon P. Spencer and W. W. Farrow for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The plaintiff had judgment against Richard E.

Eagan in the sum of $2,400, from which judgment the defendant appeals.

The record shows that the defendant Elmer R. Sly Company is a trust estate formed under and by virtue of a trust indenture, dated the fifteenth day of March, 1925. The trust instrument provides in section 3 as follows: "Every note, bond, contract, instrument, certificate or undertaking, and every other act or thing whatsoever, executed or done by the trustees, or any of them, in connection with this trust shall be conclusively taken to have been executed or done only in their or his capacity of trustee or trustees under this agreement and declaration of trust, and such trustee or trustees shall not be personally liable." The section then further provides that every instrument executed by the trustees shall recite the substance of the section showing the nonliability of the individual trustees.

On the first day of April, 1925, an agreement was entered into between the Elmer R. Sly Company and the defendant Richard E. Eagan, wherein it was recited that the party of the first part, to wit, Elmer R. Sly Company, had a contract with the Fidelity Mortgage Company, a corporation, relative to the building of certain houses, and that the party of the second part had been building houses in the city of Los Angeles, and had established a certain organization for the building thereof, and was desirous of entering into a contract with the party of the first part to assist party of the first part in carrying through successfully the contract of the party of the first part with said mortgage company. Wherefore, it was understood and agreed that party of the first part, to wit, Elmer R. Sly Company, should transfer to party of the second part, to wit, to Richard E. Eagan, a one-half interest in the profits to be derived from a building contract with the Fidelity Mortgage Company, etc. The contract just referred to, among other things, contained the following: "It is further agreed between the parties hereto, upon the execution of this agreement, that the party of the first part will constitute said party of the second part one of the trustees of the Elmer R. Sly Company, a Trust Estate, subject, however, to all the terms and conditions contained in the trust agreement constituting Elmer R. Sly Company a Trust Estate." Thereafter, the Elmer R. Sly Company and the defendant Richard

E. Eagan entered into an agreement with the plaintiff, G. A. Carpenter, which agreement is in the words and figures following, to wit:

"This agreement made in triplicate this 6th day of April, 1925, by and between Elmer R. Sly Company, a Trust Estate, organized and existing under the laws of the State of California, whose principal place of business is in the City of Los Angeles, State of California, and Richard E. Eagan of the said city and state, hereinafter called 'parties of the first part' and G. A. Carpenter, of the said city and state, hereinafter called 'party of the second part',

"Whereas, the parties of the first part are desirous of securing the services of the party of the second part to assist them in the erection of twenty-four houses in the city of Los Angeles, State of California, and whereas the party of the second part has agreed to associate himself with the said parties of the first part. Now, Therefore, the parties hereto agree with each other as follows: The party of the second part agrees to devote his entire time and attention to the business of the parties of the first part, and to diligently do and perform all work necessary to superintend the construction of such houses as shall be erected by the parties of the first part, and to carry out all instructions given him in a workmanlike manner. The parties of the first part agree to pay party of the second part the sum of $10.00 for each and every day that he is employed by said parties of the first part, and are to pay to the said second party a bonus of $100.00 on each and every house constructed and superintended by said second party, payable as and when said houses have been sold and settlement made through escrow. It is agreed by and between the parties hereto that in the event of the death of the party of the second part, that the bonus herein agreed to be paid shall cease upon all houses upon which actual construction has not been started.

"It is further agreed by and between the parties hereto that this contract is made by the undersigned, not individually, but as trustees under a certain trust agreement creating Elmer R. Sly Company, and hereby made a part hereof, and is enforceable only against, and is payable only out of, the trust property held hereunder, any and all personal liability of the trustees and beneficiaries there-

under being, and having been, expressly waived by the holder hereof.

"In Witness Whereof, the said Elmer R. Sly Company has caused its signature to be affixed hereto, and said Richard E. Eagan and G. A. Carpenter have hereunto set their hands the day and year first above written.

"ELMER R. SLY Co.

"By ELMER R. SLY.

"R. E. EAGAN,

"G. A. CARPENTER."

At the time, and prior to the execution of this agreement, G. A. Carpenter had been working for the appellant Eagan on the basis of $9 per day and fifty per cent of the profits from their building operations. Thereafter, twenty-four houses were built under the above contract, and payment of $10 per day as wages was made by the defendants, or, rather, by the Elmer R. Sly Company, to the plaintiff. No part of the bonus was paid, and the judgment against the appellant in this action is for the sum of $2,400, representing the bonus of $100 per house. The record shows that after the building of twenty-four houses the defendant, R. E. Eagan, withdrew from all connection with the building transactions and severed his connection with the Elmer R. Sly Company, a trust estate.

The transcript further shows that the plaintiff had knowledge of the agreements which we have herein referred to, and of the relationship existing between the Elmer R. Sly Company, a trust estate, and the appellant, Richard E. Eagan. The testimony of the respondent, as it appears in the transcript, in this particular, reads as follows: "Mr. Eagan and Mr. Sly both told me the arrangements under which they were working. Each was to receive one-half of the profits made from the building of the houses. I knew that they did not own the lots upon which the houses were built; they were only interested in the profits to be derived from the sale of the houses, and each of them was to receive one-half. About a week before the execution of plaintiff's exhibit I (being the first agreement referred to herein), I had a lengthy discussion with Mr. Eagan and Mr. Sly at my house, during which time we talked about the building of the houses and how much we were all going to make out of it. About the following day Mr. Sly and Mr. Eagan

outlined to me fully what their connection was with the transaction. Immediately prior to this time I had been working with Mr. Eagan on a basis of $9 per day and 50 per cent of the profits made in the building of the houses.'' The plaintiff further testified that all the directions he received relative to the building of the houses came from the Elmer R. Sly Company, and not from the defendant; that the defendant never gave any instructions relative to the building of the houses.

The record further shows that sixteen of the twenty-four houses were sold through escrow, and the remainder by the Elmer R. Sly Company, and that in order to acquire title the defendant and his wife executed a few quitclaim deeds. There is nothing in the record, however, to warrant the holding that the defendants did anything which could be construed as a violation of the contract with the plaintiff, so as to render themselves individually liable for the $100 agreed to be paid as a bonus for each house. The record, as we have indicated, shows that Elmer R. Sly Company and Eagan were interested only in the profits to be made, and had no ownership in or to either the lots upon which the buildings were erected or in the buildings themselves.

That a trust declaration similar to the one executed by the Elmer R. Sly Company is valid, and if the contracts thereafter executed by them comply with the trust declaration in setting forth in the instruments the provision of the trust declaration limiting liability to the trust estate, then and in that case third parties, or the parties so contracting with the one or the ones executing the trust declaration, have recourse only to the property of the trust estate, is expressly held in the case of *Goldwater* v. *Oltman et al.,* 210 Cal. 408 [71 A. L. R. 871, 292 Pac. 624]. ▮ Upon this appeal the appellant challenges the sufficiency of the evidence to sustain the findings of the court, the court having found the appellant individually liable, irrespective of his relation to the Elmer R. Sly Company, and that the appellant did not occupy the position of a trustee of said company. The findings of the court, so far as necessary to be considered here, may be limited to a portion of finding No. 6, which reads: ''And it is not true that said agreement also provided that the same was not made by the defendant Richard E. Eagan individually; and it is

not true that the said agreement was enforceable only against and was payable only out of certain trust property therein described (referring to the agreement), and it is not true that said agreement contained an express waiver of any and all personal liability of the defendant Richard E. Eagan, but it is true that the said agreement was executed by the said defendant Richard E. Eagan, individually and as a joint obligor with the said defendant Elmer R. Sly Company, a trust estate." The argument in support of this finding is based upon the holding of the court in the following cases: *Farmers' Exchange Bank* v. *Morse,* 129 Cal. 241 [61 Pac. 1088]; *Gummer* v. *Mairs,* 140 Cal. 537 [74 Pac. 26]; *Bell* v. *Adams,* 150 Cal. 772 [90 Pac. 118]; *Wood* v. *Longyear,* 197 Cal. 723 [242 Pac. 932, 934]; *Reuter* v. *Gaudreau,* 58 Cal. App. 634 [209 Pac. 216]; *Bagley* v. *Cohen,* 121 Cal. 604 [53 Pac. 1117]. All of these cases have been carefully examined and none of them sustain respondent's contentions.

In the case of *Bagley* v. *Cohen, supra,* it appears that the parties held liable expressly guaranteed the payment of the sum agreed to be paid in the contract. There was nothing in the contract bearing any likeness to the agreement entered into between the plaintiff in this action and the defendants Elmer R. Sly Company and Richard E. Eagan.

In the case of *Wood* v. *Longyear,* the most recent one cited by the respondent, the holding that the defendant there was liable was based upon the language of section 1659 of the Civil Code, which reads: "Where all the parties united in the promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several"; followed by a statement in the opinion as follows: "There being nothing in the instrument itself to overcome this presumption, it follows that the trial court was correct in holding that the obligation of these defendants was a joint and several obligation, and hence, that the action might have been begun, and might proceed against either of them, in so far as an individual remedy against either was sought," etc.

In the contract before us there is something to the contrary. The contract itself expressly provides the fund out of which payment shall be made. Nor does section 1660 of the Civil Code, which provides that a promise made in

the singular, but executed by several persons and presumed to be joint and several, apply to this case.

Respondent further contends that the defendant Richard E. Eagan did not occupy the position of a trustee of the Elmer R. Sly Company, a trust estate, and therefore, the exemption of liability, other than as against the property of the company, does not apply to him. The excerpt from the agreement between Elmer R. Sly Company and Richard E. Eagan which we have set forth, and of which the plaintiff had knowledge, is a conclusive answer to this contention.

Taking all the instruments together and considering the building project in which the parties were about to engage, it seems to us absolutely clear that the $100 bonus was to be paid out of the profits, if any, derived from the undertaking. This is further strengthened by the fact that the plaintiff, instead of being paid $9 a day, his original compensation, was given an additional $1, and was paid at the rate of $10 per day. The plaintiff's own testimony shows that he understood the whole transaction; he understood the basis upon which the parties were operating, and that it was in the expectation of profits to be made by all of the parties in building the houses and selling the same. Section 1636 of the Civil Code provides that: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of the contract, so far as the same is ascertainable and lawful." Other sections of the code provide that the whole contract must be taken together, and also, the circumstances under which it is made should be taken into consideration. In this behalf it is sufficient to cite California Jurisprudence, volume 6, page 252, where it is said: "The primary object of all interpretation is to ascertain and carry out the intention of the parties." This text is supported by a long list of authorities, so numerous that we cannot list them here.

Respondent makes the further contention that the condition in the agreement constituted only a stipulation as to the time of payment of the bonus fixed therein, and cites 13 C. J. 632. This reference, however, we think inapplicable. The statement of the law controlling in this case is found in the same volume of Corpus Juris, but on page

631, section 701, which reads: "A contract or promise to pay may be restricted to a particular fund so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made, is due to the neglect, or the unreasonable refusal to act, of the promisor, or is otherwise attributable to him. So, where the contract of the parties is that the creditor shall look to a particular fund, he cannot, on the failure of such fund not attributable to the fault of the debtor, hold the debtor personally responsible, unless the contract contains stipulations amounting to a guaranty that the funds specified shall be sufficient for payment, or unless the promisee is induced to perform by the promise that a third person who, the promisor claims, owes him a debt or duty, shall pay the agreed price to the promisee, in which case the promisor is primarily liable to pay the contract price, although his debtor does not pay, or the debt or the duty does not exist."

We have in this case an agreement providing that the bonus shall be paid out of a certain fund. There is also an agreement in the record, of which the respondent had knowledge, that the appellant Eagan stood in the relation of trustee to the Elmer R. Sly Company, by virtue of its own written agreement. This excludes any reasonable contention that the appellant stood either in the relation of an individual promisor or as a guarantor of the payment of the $100 per house bonus, to the respondent. There was no profit in the enterprise, and therefore no trust estate was created.

What we have said we think shows conclusively that the finding of the trial court from which we have quoted is not sustained by the testimony, but is contrary thereto. There is nothing in the record upon which any finding could be based to the effect that the appellant has done anything to render himself liable or void the effect of the agreement entered into by the parties to this action. The contention that the quitclaim deeds amounted thereto is without merit as they were executed only to remove a cloud upon the titles.

The judgment is reversed.